IN THE MATTER OF: LEANNA (SARAH) GLEISNER AND TOBIAS (ISAAC) GLEISNER

No. COA99-1585

(Filed 29 December 2000)

### 1. Child Abuse and Neglect— motion to dismiss petition— properly denied

The trial court properly denied respondent's motion to dismiss a petition alleging that her children were neglected where one child, Sarah, had been left alone for about 3½ hours at about age 8 as a form of discipline; Sarah was found to have a cut on her lip and bruising on her face; respondent's fiancee, Rush, had spanked Sarah at church when she misbehaved and had grabbed and hit Sarah's face when they arrived home; Rush had punched holes in the walls and had once cracked the car windshield with his fist while the children were in the vehicle; respondent was completely uncooperative with social services; the other child, Isaac, had a wound on his lip which respondent insisted was a cold sore but which was later determined to be an infected cut; and respondent herself had a black eye.

### 2. Appeal and Error— plain error—not extended beyond criminal context

There was no plain error in the court's admission of certain hearsay statements in a juvenile neglect proceeding where it could not be determined whether the court did, in fact, rely upon the hearsay statements in reaching its legal conclusion. Furthermore, there was no reason upon this record to reconsider the extension of the plain error doctrine beyond the criminal context.

### 3. Child Abuse and Neglect— findings—insufficient

The Court of Appeals was unable to conduct a proper review of a trial court's findings of neglect where the "findings" simply

recited the evidence and did not resolve the numerous disputed issues; the basis for the court's determination of neglect was not clear from the record; it could not be determined whether the court's order was defective in failing to find impairment or a substantial risk of impairment; and there were small but significant inaccuracies in the findings. The case was remanded for new findings, but no additional evidence.

Appeal by respondent from order entered 11 October 1999 by Judge William M. Cameron, III in Onslow County District Court. Heard in the Court of Appeals 7 November 2000.

*Onslow County Department of Social Services, by Ed Blackwell, for petitioner-appellee.*

*McNeil & Gilbert, by Joseph B. Gilbert, for respondent-appellant.*

*McNamara & Smith, P.L.L.C., by Lynn Smith, for Guardian ad Litem.*

FULLER, Judge.

Christine Gleisner (respondent), the mother of the two juveniles in question (Sarah and Isaac), appeals from the 17 May 1999 order of the trial court finding both juveniles neglected. For the reasons set forth herein we remand.

The Onslow County Department of Social Services (petitioner) first investigated the family on 2 June 1997 after receiving a report that Sarah had been left at home unattended. Stacy Specht, a social worker employed by petitioner, went to the family's trailer home that Sunday afternoon and found Sarah, approximately eight years old at the time, alone in the trailer. Conflicting testimony was presented as to how long Sarah had been left alone. Specht testified that Sarah had been left alone for three and a half hours. Respondent testified that Sarah had only been left alone for two and a half hours. Conflicting testimony was also presented regarding Sarah's physical appearance. Specht testified that Sarah had a cut on her lip and bruises on her face, while respondent testified that Sarah had a small cut but no bruises. Conflicting testimony was presented as to the cause of Sarah's physical appearance. Specht testified that Sarah told her that respondent's fiancée, Lonnie Rush, had slapped Sarah in the face. Although this testimony was clearly hearsay, respondent did not object to its admission. Specht also testified without objection that

**IN RE GLEISNER**

[141 N.C. App. 475 (2000)]

Rush admitted to her that he had spanked Sarah at church that morning when she had misbehaved, and that after he brought Sarah home, he grabbed her face and hit her face. Respondent, on the other hand, testified that the trailer door had swung open in the wind and had hit Sarah in the face when she returned home from church. Respondent further testified that Rush had never hit Sarah. Rush testified that Sarah had been hit in the face by the trailer door, and that he did not hit Sarah. He also testified that although he had placed his hand over Sarah's mouth at church to get her to stop screaming, he did not believe this could have caused any bruising.

The following day, petitioner continued the investigation by sending Robin Grantham to the family's home. Grantham did not find the family at home, but learned that Sarah had been placed overnight with a neighbor. According to Grantham's testimony, she interviewed Sarah at the neighbor's home and observed three bruises on her right cheek and a split lip. Grantham testified that Sarah told her that Rush had hit her as discipline for disobeying him. This statement was objected to as hearsay, and the trial court sustained the objection. However, the trial court admitted the statement for the limited purpose of explaining the continued investigation by petitioner.

Grantham testified that when she confronted respondent with Sarah's statement about Rush hitting her, respondent told Grantham that Sarah had been hit in the face by the trailer door when it blew open in the wind, and respondent denied that Rush had hit Sarah. Grantham also interviewed Rush on this visit. Grantham testified without objection that Rush admitted that he had punched holes in the walls, and that he had once cracked the car windshield with his fist while the children were in the vehicle. Respondent acknowledged at the hearing that Rush once lost his temper in the car and hit the windshield. Grantham testified that she also interviewed several neighbors on this visit who expressed concern that both children were often left alone all day and were allowed to play unsupervised across the street. This hearsay evidence was not objected to by respondent. Grantham also testified that she found respondent to be completely uncooperative. Respondent testified that Grantham threatened to have her children taken away if respondent did not cooperate.

Approximately nine months later, on 7 March 1998, Specht investigated a report that Isaac had a cut lip. During this second investigation, Specht went to the home and saw that Isaac did, in fact, have a wound on his upper lip. Respondent told Specht that the wound was

a cold sore. A subsequent medical examination showed that the wound was a cut that had become infected and not a cold sore. Conflicting evidence was presented as to the cause of the cut on Isaac's lip. Specht testified without objection that once Isaac and Sarah were placed in petitioner's custody, Isaac told Specht that Rush had hit him five times in the face as a form of discipline, and that Sarah similarly told Specht that Isaac's cut lip was a result of Rush hitting Isaac. Respondent testified that she and Rush have never hit either child other than spanking them.

Specht also testified that respondent had a blackened eye at the time of the second investigation. Conflicting evidence was presented regarding the cause of respondent's blackened eye. Specht testified that respondent told her that she had a blackened eye because she had been wrestling with Isaac and he had kicked her accidentally. Respondent testified that Rush has never hit her. However, Specht testified without objection that once Isaac was placed in petitioner's custody, Isaac told Specht that he had not been wrestling with his mother and had not kicked her.

On the same day as the second investigation, 7 March 1998, petitioner filed a petition alleging neglect with regard to both juveniles, and alleging abuse with regard to Isaac, pursuant to N.C.G.S. § 7A-517 (1996) (repealed effective 1 July 1999, 1998 N.C. Sess. Laws ch. 202, § 5). Following an adjudicatory hearing, the trial court concluded that Isaac was not abused, but found that both children were neglected. The court ordered physical placement of Isaac with his maternal great aunt and uncle, with petitioner retaining legal custody, and further ordered physical and legal custody of Sarah to remain with petitioner for future placement. On appeal, respondent raises three assignments of error.

[1] Respondent first contends the trial court erred in denying her motion to dismiss at the close of petitioner's evidence. Upon a motion to dismiss, the court must view the evidence in the light most favorable to the petitioner, giving the petitioner the benefit of any inference. *In re Cusson*, 43 N.C. App. 333, 335, 258 S.E.2d 858, 860 (1979). The test is whether there is substantial evidence to support petitioner's allegations. *Id.* In the instant case, the petition alleges that both children are neglected juveniles. A "neglected juvenile" is defined as "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care;

or who lives in an environment injurious to the juvenile's welfare." G.S. § 7A-517(21). In the instant case, the evidence presented by petitioner, taken in the light most favorable to petitioner, amounts to the following: (1) that Sarah had been left alone, at approximately eight years of age, for approximately three and a half hours by respondent as a form of discipline; (2) that Sarah was found to have a cut on her lip and bruising on her face; (3) that Rush had spanked Sarah at church when she misbehaved, and had grabbed her face and hit her face once they arrived home; (4) that Rush had punched holes in the walls, and that he had once cracked the car windshield with his fist while the children were in the vehicle; (5) that respondent was completely uncooperative with petitioner; (6) that Isaac had a wound on his upper lip which respondent insisted was a cold sore but which was later determined to be an infected cut; and (7) that respondent had a blackened eye. We believe petitioner offered substantial evidence of neglect, and that this evidence was sufficient to withstand the motion to dismiss at the close of petitioner's evidence. Thus, the trial court properly denied respondent's motion to dismiss, and this assignment of error is overruled.

[2] Respondent also contends the trial court's reliance on certain hearsay statements, admitted at the hearing without objection, constitutes plain error. A "plain error" is a fundamental error that is so prejudicial as to result in "a miscarriage of justice or in the denial to appellant of a fair trial." *State v. Holloway*, 82 N.C. App. 586, 586-87, 347 S.E.2d 72, 73 (1986) (citations omitted). A plain error "justifies relief on appeal though not objected to in the trial court." *Id.* at 586, 347 S.E.2d at 73. Respondent acknowledges that this Court has held that the "plain error" rule is intended to apply only in criminal cases, *see Wachovia Bank v. Guthrie*, 67 N.C. App. 622, 626, 313 S.E.2d 603, 606, *disc. review denied*, 311 N.C. 407, 319 S.E.2d 280, *cert. denied*, 312 N.C. 90, 321 S.E.2d 909 (1984), but nonetheless asks us to hold that the doctrine should be applied in this civil case in order to prevent manifest injustice. We decline to do so. In the first place, we are unable to discern from a review of the trial court's order whether or not the trial court did, in fact, rely upon any of the hearsay statements in reaching its legal conclusion. Furthermore, even if it were evident that the trial court had relied upon the hearsay statements, this Court has previously declined to extend the plain error doctrine to child custody cases. *Raynor v. Odom*, 124 N.C. App. 724, 732, 478 S.E.2d 655, 660 (1996). Upon this record, we perceive no reason to reconsider whether the plain error doctrine should be extended beyond the criminal context. This assignment of error is overruled.

**[3]** Respondent lastly argues that the evidence was insufficient to support the trial court's conclusion that both Sarah and Isaac are neglected. A proper review of a trial court's finding of neglect entails a determination of (1) whether the findings of fact are supported by "clear and convincing evidence," N.C.G.S. § 7A-635 (1996) (repealed effective 1 July 1999, 1998 N.C. Sess. Laws ch. 202, § 5), and (2) whether the legal conclusions are supported by the findings of fact, *see In re Hughes*, 74 N.C. App. 751, 759, 330 S.E.2d 213, 219 (1985). However, in the case *sub judice*, we are unable to conduct a proper review for the following reasons.

First, the "factual findings" in the trial court's order are not actually factual findings at all. For example, the third factual finding states: "Isaac told Ms. Specht that the mother's live-in boyfriend, Lonnie Rush, hit him five times in the mouth." However, the sixth factual finding states: "While [respondent] acknowledged that the March 1998 injuries on Isaac did exist, she did not know of any physical violence which could have produced such an injury." These findings are simply a recitation of the evidence presented at trial, rather than ultimate findings of fact. In a nonjury trial, it is the duty of the trial judge to consider and weigh all of the competent evidence, and to determine the credibility of the witnesses and the weight to be given their testimony. *See Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968). If different inferences may be drawn from the evidence, the trial judge must determine which inferences shall be drawn and which shall be rejected. *See id.* Where there is directly conflicting evidence on key issues, it is especially crucial that the trial court make its own determination as to what pertinent facts are actually established by the evidence, rather than merely reciting what the evidence may tend to show. *See Davis v. Davis*, 11 N.C. App. 115, 117, 180 S.E.2d 374, 375 (1971). Here, the trial court failed to make ultimate findings of fact resolving the numerous disputed issues.

The second reason we are unable to conduct a proper review is that it is unclear from the record on what basis the trial court determined that Sarah is neglected. The trial court's order states that Isaac was found to be neglected because he lives in an injurious environment, and that Sarah was found to be neglected "based on the incident in March." In the first place, although these are clearly legal conclusions, they are designated factual findings. More importantly, although the court found Sarah to be neglected "based on the incident in March," the incident involving Sarah being left at home occurred in June of 1997, while the incident in March of 1998

involved Isaac's cut lip and did not involve Sarah directly in any way. This vague and apparently inaccurate reference to "the incident in March" as the basis for the court's determination that Sarah is neglected impedes our ability to determine whether the trial court's conclusions are supported by the findings.

Furthermore, we have consistently held that where neglect is based on a failure to receive proper care, supervision, or discipline, it must also be established that there is "some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide 'proper care, supervision, or discipline.' " *In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (quoting G.S. § 7A-517(21)). Thus, if the trial court's determination that Sarah is neglected was based on the conclusion that she has not received proper care, supervision, or discipline, the trial court must also reach the legal conclusion that Sarah has suffered some impairment as a result, or that there is a substantial risk that she will suffer some impairment as a result. However, we are unable to discern on what basis Sarah was found to be neglected, and we are therefore unable to determine whether the trial court's order is defective for failing to find impairment or a substantial risk of impairment.

Finally, there are small but significant inaccuracies that appear in the findings. For example, the second finding of fact states: "Lonnie Rush advised Ms. Grantham at the time that he had been angry and had placed his hand over Sarah's mouth, but did not intend to injure her." In fact, Rush had spoken to Specht about this conduct, not Grantham. This discrepancy is significant because, contrary to Rush's testimony, Specht testified that Rush "admitted to grabbing [Sarah's] face and hitting her face." If the court believed that Rush discussed this incident with Grantham, rather than Specht, the court may well have overlooked Specht's conflicting testimony on the matter.

For the foregoing reasons, we remand the case to the trial court with instructions to make ultimate findings of fact based on the evidence and to enter clear and specific conclusions of law based on the findings of fact. We further instruct the trial court not to take any additional evidence in the case.

Remanded.

Judges GREENE and WYNN concur.