TIMMONS-GOODSON, Judge.
Respondent appeals the trial court order terminating her parental rights to her three-year-old son, Ronald.[1] For the reasons discussed herein, we affirm the trial court order.
The facts and procedural history pertinent to the instant appeal are as follows: On 6 January 2003, Buncombe County Department of Social Services ("petitioner") filed a petition ("the petition") requesting that the trial court terminate the parental rights of respondent and her husband, Mark.[2] The petition asserted that sufficient grounds existed to terminate respondent's parentalrights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2). In support of this assertion, the petition alleged that respondent had neglected Ronald and had willfully left Ronald in foster care for more than twelve months without showing any reasonable progress in correcting the conditions which led to Ronald's removal.
On 24 February 2003, respondent filed an answer denying the allegations of the petition. The case proceeded to trial, and on 12 June 2003, the trial court terminated respondent's parental rights, concluding in pertinent part:
3. That pursuant to N.C.G.S. §7B-1111[(a)](1) [respondent] and [Mark] neglected [Ronald] when [Ronald] was placed in the custody of the Buncombe County Department of Social Services on November 15, 2001, and continue to neglect [Ronald] in that the Respondent Parents have not complied with previous court orders and have continued to engage in domestic violence; they have failed to provide the personal contact, love, and affection that inheres in the parental relationship; and, they have failed to provide a stable living environment and proper food for [Ronald]. There is a reasonable probability of continuing neglect from the Respondent Parents.
4. That pursuant to N.C.G.S. §7B-1111[(a)](2) [respondent] and [Mark] have willfully left [Ronald] in foster care for more than twelve (12) months without showing any reasonable progress under the circumstances within the twelve (12) months to correct the conditions which led to the removal of [Ronald]. That [Ronald] has been in the continuous custody of the Buncombe County Department of Social Services since November 15, 2001, and in foster care.
5. That it is in the best interest of [Ronald] that the parental rights of [respondent] and [Mark] to [Ronald] be terminated and [Ronald] be released for adoption.
It is from this order that respondent appeals.
The issues on appeal are whether: (I) the trial court's findings of fact are supported by clear, cogent, and convincing evidence; (II) the trial court erred in concluding that sufficient grounds exist to terminate respondent's parental rights; and (III) the trial court abused its discretion in determining that it was in Ronald's best interest to terminate respondent's parental rights.
Respondent first argues that the trial court's findings of fact were not supported by clear, cogent, and convincing evidence. Respondent asserts that the trial court erred in making its findings because the findings merely recite witness testimony and fail to resolve conflicts in the evidence. We disagree.
Termination of parental rights involves a two-stage process. In re Locklear, 151 N.C. App. 573, 575, 566 S.E.2d 165, 166 (2002). At the adjudicatory stage, the petitioner must establish by clear, cogent, and convincing evidence that sufficient grounds exist to terminate parental rights. In re Young, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997). On appeal, this Court reviews the trial court's findings of fact to determine whether the findings are supported by clear, cogent, and convincing evidence and whether the findings support the trial court's conclusions of law. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), appeal dismissed and disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001).
While "there is no specific statutory criteria which must bestated in the findings of fact or conclusions of law, the trial court's findings must consist of more than a recitation of the allegations." In re O.W., ___ N.C. App. ___, ___, 596 S.E.2d 851, 853 (2004) (citing In re Anderson, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002)). This Court has previously stated that in a non-jury trial, the trial court must "consider and weigh all of the competent evidence, and [] determine the credibility of the witnesses and the weight to be given their testimony." In re Gleisner, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000). In Gleisner, we remanded the trial court's decision to terminate the respondent's parental rights after concluding that the trial court's findings were "simply a recitation of the evidence presented at trial, rather than ultimate findings of fact." Id. Recognizing that it is the trial court's responsibility to determine "what pertinent facts are actually established by the evidence" and noting that we were unable to conduct a proper review of the trial court's decision, we remanded the case to the trial court with instructions to make ultimate findings of fact based upon the evidence. Id. at 480, 539 S.E.2d at 366. The decision was consistent with N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (2003), which requires:
In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment.
In the instant case, in support of its conclusion that respondent had neglected Ronald, the trial court made the followingpertinent findings of fact:
14. That [respondent] . . . neglected [Ronald] when [Ronald] was placed in the custody of the Buncombe County Department of Social Services on November 15, 2001, to wit:
. . . .
16. [Ronald] had a history of poor weight gain, a diagnosis of reflux, and had undergone surgery for pyloric stenosis at four weeks of age.
. . . .
19. That the Buncombe County Department of Social Services received a second Child Protective Services complaint on November 6, 2001. This report alleged that [respondent and Mark] had gotten into a fight and [respondent] pushed [Mark] through a glass window. It was alleged that the glass shattered close to [Ronald] and that [Ronald] was thrown on the couch by [respondent]. This report was investigated by the Buncombe County Department of Social Services on[-]call worker. [Respondent] was arrested and [Ronald] was left in the care of the maternal grandparents[.]
20. That on or about November 6, 2001, the Buncombe County Department of Social Services learned that [Ronald] continued to have poor weight gain, that [respondent] had apparently not been mixing the formula correctly and that [respondent and Mark] had not kept [Ronald's] appointment with the pediatric surgeon for a recheck following the surgery for pyloric stenosis.
21. That on November 6, 2001, a staffing meeting was held at the Buncombe County Department of Social Services and both parents were present. [Respondent] admitted pushing [Mark] through a glass window near [Ronald]. She denied throwing [Ronald] on the couch. She stated that she had not been taken [sic] her medication as prescribed. She also admitted to not mixing [Ronald's] formula correctly but stated she did this because she was afraid she was going to run out offormula, although she could have obtained more formula from WIC or from the pregnancy support center.
. . . .
26. That on December 18, 2001, [respondent and Mark] got into a physical altercation while driving and hit a car in the Buncombe County Department of Social Services parking lot. [Mark] entered the Buncombe County Department of Social Services on that date and stated that he wanted to relinquish his parental rights to [Ronald]. He had a scratch on his neck and stated that [respondent] had scratched him and that he had taken the keys out of the ignition while she was driving.
. . . .
33. That [respondent] reported on April 28, 2002, that [Mark] had attempted to smother her with a pillow. On May 8, 2002 [Mark] reported that [respondent] threatened to go to the police to accuse him of abusing her and threatening to kidnap [Ronald] from the foster home. On or about this same date, [Mark] was observed pushing [respondent] in the parking lot of the Buncombe County Department of Social Services. Following this incident [respondent and Mark] again separated[.]
34. That on or about July 9, 2002, [respondent] filed charges against [Mark] for an episode of domestic violence. [Respondent] stated that she and [Mark] had argued on July 7, 2002 and he had bit her on the arm and hit her on the arm with a Play Station. She filed a restraining order against him and was observed by a social worker and the Court to have a small mark on her forearm and two small bruises on her upper arm. [Mark] stated that [respondent] had hit him and that his mouth was swollen, cut, and had marks around it.
. . . .
36. That on July 18, 2002 a hearing was held regarding the restraining order obtained by [respondent] against [Mark] on July 9, 2002. As a result of this hearing the Court ordered no contact between [respondent and Mark]. Later on this date, [respondent] went to [Mark's] place of employment and tried to get money from him. She went to his place of employment again the following day and threatened to kill [Mark]. This statement was made in front of [Mark's] employer who pressed charges against [respondent] for delivering a threat.
37. That [respondent] has continued to claim that [Mark] has called and harassed her since their last separation and subsequent restraining order and that she has made tapes of these phone calls. [Mark's father] stated that he has tapes of [respondent] calling [Mark].
38. That [respondent] has been unable to maintain employment and subsequently lost her apartment. She is now living with her male friend . . . and stated that he pays her phone and cable bills.
. . . .
54. That the Court finds that [Ronald] [has been] in the custody of the Buncombe County Department of Social Services since November 13, 2001 and [has] remained continuously in the care and control of the Buncombe County Department of Social Services since then due to domestic violence and feeding issues. That neglect due to domestic [violence] and feeding issues was found on January 9, 2002 at a dispositional hearing. . . . The incidents of domestic violence between the parents [have] continued since [Ronald] [has been] in custody of the Department. That the most serious incident occurred when [respondent] pushed [Mark] through a glass door in the presence of [Ronald], who was 4-5 feet away. That another incident occurred as [Mark] pulled the key from the ignition and the car wrecked in the Buncombe County Department of Social Services parking lot. That [respondent] was scratching [Mark] about his face and neck. . . . Another incident occurred when [respondent] went to [Mark's] work place asking for money and threatened to shoot him.
After reviewing the testimony at the termination hearings aswell as the entire record, including the trial court's order and those findings detailed above, we conclude that while some of the trial court's findings of fact do little more than relate the contentions of each side, as a whole the findings are more than a mere recitation of allegations as in Gleisner. The findings are not so "vague" and "inaccurate" that they impede our ability to determine whether the trial court's conclusion was supported by competent evidence. Gleisner, 141 N.C. App. at 481, 539 S.E.2d at 366. Furthermore, we also conclude that the trial court's findings sufficiently resolve conflicts in the evidence. The fifty-five detailed findings of fact are based upon trial testimony provided by respondent, Mark, members of their family, and seven social workers assigned to the case. It is apparent from the findings of fact that, through "'processes of logical reasoning'" based on the evidentiary facts before it, the trial court found "the ultimate facts essential to support the conclusions of law." In re Harton, 156 N.C. App. 655, 660, 577 S.E.2d 334, 337 (2003) (citation omitted). "The pages of testimony supply ample and competent evidence to support the trial court's findings of neglect, and they are binding upon us on appeal, even though there may be evidence contra." In re Montgomery, 311 N.C. 101, 112-13, 316 S.E.2d 246, 254 (1984). Furthermore, the trial court's findings of fact are "sufficiently specific" to allow this Court to "review the decision and test the correctness of the judgment." Quick v. Quick, 305 N.C. 446, 451, 290 S.E.2d 653, 657 (1982). Therefore, we conclude that the trial court's findings of fact meet the requirements of Rule 52and are sufficiently supported by clear, cogent, and convincing evidence. Accordingly, respondent's first argument is overruled.
Respondent next argues that the trial court erred in concluding that sufficient grounds exist to terminate respondent's parental rights. Respondent asserts that the trial court's conclusion was not adequately supported by its findings of fact. We disagree.
In a termination of parental rights proceeding, a determination that any one of those grounds listed in N.C. Gen. Stat. § 7B-1111 exists is sufficient to support termination of parental rights. In re Williamson, 91 N.C. App. 668, 678, 373 S.E.2d 317, 322-23 (1988). In the instant case, the trial court determined that sufficient grounds exist to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2).
N.C. Gen. Stat. § 7B-1111(a)(1) authorizes the trial court to terminate a respondent's parental rights upon finding that the respondent "has abused or neglected the juvenile." N.C. Gen. Stat. § 7B-101(15) (2003) defines a "neglected juvenile" as follows:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
"In determining whether a child is neglected, the determinative factors are the circumstances and conditionssurrounding the child, not the fault or culpability of the parent." Montgomery, 311 N.C. at 109, 316 S.E.2d at 252. However, because "[n]eglect may be manifested in ways less tangible than failure to provide physical necessities[,] . . . the trial judge may consider . . . a parent's complete failure to provide the personal contact, love, and affection that inheres in the parental relationship." In re Apa, 59 N.C. App. 322, 324, 296 S.E.2d 811, 813 (1982). Thus, "the fact that the parent loves or is concerned about [the] child will not necessarily prevent the court from making a determination that the child is neglected." Montgomery, 311 N.C. at 109, 316 S.E.2d at 252.
In the instant case, the trial court concluded that respondent had neglected Ronald as follows: (i) respondent failed to comply with previous court orders and continued to engage in domestic violence; (ii) respondent failed to provide the personal contact, love, and affection that inheres in the parental relationship; and (iii) respondent failed to provide a stable living environment and proper food for Ronald.
As detailed above, the trial court's findings of fact discuss respondent's history of involvement in violent domestic disputes, both as a victim and as a perpetrator. The findings of fact also discuss respondent's admitted inability to provide the proper food and personal care for Ronald, who suffers from pyloric stenosis and significant delays in physical and cognitive development. Several of the findings of fact detail a physical fight between respondent and Mark during which Ronald was thrown onto a couch and Mark wasthrown through a glass door four feet away from Ronald. We conclude that these findings of fact are sufficient to support a determination that respondent was living "in an environment injurious to [his] welfare," and was thus a "neglected juvenile" as defined by N.C. Gen. Stat. § 7B-101(15).
Respondent maintains that "[b]ecause [Ronald] was removed from his mother in November 2001, and adjudicated neglected in January 2002, there was no current neglect by [respondent]." We note that "termination of parental rights may not be based solely upon a prior adjudication of neglect." In re Reyes, 136 N.C. App. 812, 814, 526 S.E.2d 499, 501 (2000). However, even "[i]f there is no evidence of neglect at the time of the termination proceeding, . . . parental rights may nonetheless be terminated if there is a showing of a past adjudication of neglect and the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to her parents." Id. at 815, 526 S.E.2d at 501.
In the instant case, the trial court determined in its third conclusion of law that "[t]here is a reasonable probability of continuing neglect from [respondent and Mark]." This determination is supported by the trial court's previous finding that respondent "has not complied with previous orders of the Court in that she has not obtained stable housing or employment, continued to engage in domestic violence with [Mark], and did not comply with the previous orders of this Court to follow the recommendations of her psychological evaluation by obtaining individual and DBT therapy." Therefore, we hold that the trial court did not err in concluding that sufficient grounds existed to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). Having so concluded, we need not address respondent's argument regarding termination of her parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). See Reyes, 136 N.C. App. at 815, 526 S.E.2d at 501.
Respondent's final argument is that the trial court erred in determining that it was in Ronald's best interest to terminate her parental rights. Respondent asserts that the trial court abused its discretion in making its determination. We disagree.
Once the trial court determines that any one of the conditions authorizing termination of parental rights exists, the trial court is required to issue an order terminating parental rights unless "the court shall further determine that the best interests of the juvenile require that . . . parental rights . . . not be terminated." N.C. Gen. Stat. § 7B-1110(b) (2003). "The trial court's decision to terminate parental rights, if based upon a finding of one or more of the statutory grounds supported by evidence in the record, is reviewed on an abuse of discretion standard." In re McMillon, 143 N.C. App. 402, 408, 546 S.E.2d 169, 174, disc. review denied, 354 N.C. 218, 554 S.E.2d 341 (2001). "Evidence heard or introduced throughout the adjudicatory stage, as well as any additional evidence, may be considered by the court during the dispositional stage." In re Blackburn, 142 N.C. App. 607, 613, 543 S.E.2d 906, 910 (2001). "It is . . . within the court's discretion to consider such factors as family integrity inmaking its decision of whether termination is in the best interests of the child[]." In re Smith, 56 N.C. App. 142, 150, 287 S.E.2d 440, 445, cert. denied, 306 N.C. 385, 294 S.E.2d 212 (1982). However, "the child[]'s best interests are paramount, not the rights of the parent." Id.
In the instant case, after hearing evidence from both parties, the trial court determined that it was in Ronald's best interest to terminate respondent's parental rights. In light of the evidence presented to the trial court and discussed above, we are unable to conclude that the trial court's determination is arbitrary or manifestly unsupported by reason. Therefore, we hold that the trial court did not abuse its discretion in terminating respondent's parental rights.
Affirmed.
Judges HUNTER and McCULLOUGH concur.
Report per Rule 30(e).

For the purposes of this opinion, we will refer to the minor child by the pseudonym "Ronald."

For the purposes of this opinion, we will refer to the minor child's biological father by the pseudonym "Mark."