IN THE MATTER OF: A.E.
No. COA08-556
Court of Appeals of North Carolina
Filed October 21, 2008
This case not for publication
Northen Blue, L.L.P., by Carol J. Holcomb and Samantha H. Cabe, for petitioner-appellee.
Mercedes O. Chut for respondent-appellant mother.
Levine & Stewart, by James E. Tanner III, for respondent-appellant father.
Pamela Newell Williams for appellee Guardian ad Litem.
GEER, Judge.
Respondents mother and father appeal from an order adjudicating their son, A.E. ("Andrew"), neglected.[1] We agree with respondents that the trial court failed to make sufficient findings of fact to support its adjudication of neglect. Specifically, the trial court's order lacks any determination whether Andrew suffered harm or was at a substantial risk of harm in respondents' care. We must, therefore, remand for further findings of fact.

Facts
In 2005, the Chatham County Department of Social Services ("CCDSS") assumed custody of respondents' two oldest children following a drug raid at their home. Those two children were later adjudicated neglected.
Andrew was born on 16 March 2006. When Andrew was one week old, CCDSS removed him from respondents' home and filed a juvenile petition, alleging that respondents' history of domestic violence, drug use, and drug dealing placed Andrew at risk of harm. After a permanent planning conference on 28 March 2006, Andrew was returned to respondents' custody.
In October 2006, an incident of domestic violence occurred between respondents. When CCDSS learned of this incident, it did not remove Andrew, but rather increased services to the family. Because of these services, the family began to make some progress, and in February 2007, Andrew's two older siblings were returned to respondents for a trial period.
On 15 March 2007, at about 10:00 p.m., Officer Kevin Dodson of the Siler City Police Department stopped respondents because of a suspicious license plate. In a search of the car, officers found a prescription pill bottle containing 101 Oxycontin pills in the name of James Howard, an empty prescription pill bottle in the name of Linda Alston, about a gram of marijuana residue, and some rolling papers. As a result of this stop, respondents were charged with fictitious registration plates, felony possession of Oxycontin, trafficking in Oxycontin, and misdemeanor possession of marijuana. On 16 March 2007, the day after the stop, CCDSS removed all three children from respondents' home.
On 20 March 2007, CCDSS filed a second petition regarding Andrew, alleging that Andrew was a neglected juvenile in that he did not "receive proper care, supervision, or discipline from [his] parent, guardian, custodian, or caretaker" and he "live[d] in an environment injurious to [his] welfare." CCDSS alleged that Andrew's parents had "a long history of domestic violence and drug use" and that his brother and sister had been removed from respondents' home following a drug raid at the home prior to Andrew's birth. CCDSS asserted that the second petition had been filed "as a result of the Respondent's [sic] having been recently charged with possession of marijuana and prescription drugs." CCDSS concluded that "[g]iven the Respondent's [sic] continuing use and/or sale of illegal drugs, and their obvious lack of progress, the juvenile is at risk in their custody."
At the adjudication hearing, beginning on 1 June 2007, the trial court heard testimony from two law enforcement officers regarding the traffic stop on 15 March 2007. Officer Phillip Cook, who searched respondents' car that day, testified that he was familiar with respondents because he had previously investigated their involvement in drug deals in Chatham County. Officer Cook testified that he had used undercover informants to purchase cocaine, marijuana, and Oxycontin from respondents in the past. The officer also testified that during the drug raid on respondents' home in 2005, officers found drug paraphernalia, tool sused to grow and cultivate marijuana, and a loaded gun hanging on the back of a door in reach of the children. CCDSS also called as witnesses respondent father's probation officer, a foster care social worker, and respondent mother's former employer.
Mr. James Howard, the person to whom the prescription found in respondents' car was written, testified on behalf of respondents. He stated that he employed respondent mother as a private nurse; that on 15 March 2007, she had driven him to an appointment earlier in the day; and that he had left his Oxycontin in the car by accident.
At the end of the first day of the hearing, the trial court decided to defer any further hearing until after the completion of the criminal proceedings. The District Attorney's Office ultimately dismissed all the drug-related charges against respondents.
When the abuse, neglect, and dependency hearing resumed, CCDSS called as witnesses two psychologists, the social worker who had previously testified, and a visitation supervisor. Respondents in turn offered the testimony of their individual therapists, respondent father's probation officer, and the family physician. The Guardian ad Litem also testified. On 29 February 2007, the trial court entered an order determining that Andrew was a neglected child and ordering that he be placed in CCDSS custody with supervised visitation. Respondents timely appealed to this Court.

Discussion
"The role of this Court in reviewing an initial adjudication of neglect and abuse is to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact." In re D.S.A., 181 N.C. App. 715, 717, 641 S.E.2d 18, 20 (2007) (internal quotation marks omitted). In a non-jury neglect and abuse adjudication, "'the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings.'" Id. at 717-18, 641 S.E.2d at 21 (quoting In re Helms, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997)).

I
Respondents first contend that the trial court's findings of fact are insufficient to support its adjudication of Andrew as a neglected juvenile because the trial court failed to make findings that there existed a risk of repeated neglect in the future if Andrew was left in respondents' care. The test recited by respondents, however, was adopted for termination of parental rights proceedings and not initial abuse, neglect, and dependency proceedings. See In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) ("We hold that evidence of neglect by a parent prior to losing custody of a child  including an adjudication of such neglect  is admissible in subsequent proceedings to terminate parental rights. The trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect.").
In an abuse, neglect, and dependency proceeding, the trial court first determines whether the juvenile met the definition of a neglected juvenile under N.C. Gen. Stat. § 7B-101(15) (2007) at the time the petition was filed. That statute defines a neglected juvenile to be:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
Id. In this case, the trial court made sufficient findings of fact relating to whether Andrew met the statutory definition of a neglected juvenile.
The trial court's inquiry, in these cases, does not, however, end with the definition of a neglected juvenile. Our appellate courts have further held that "[i]n order to adjudicate a child to be neglected, the failure to provide proper care, supervision, or discipline must result in some type of physical, mental, or emotional impairment or a substantial risk of such impairment." In re C.M., 183 N.C. App. 207, 210, 644 S.E.2d 588, 592 (2007). The trial court has "'some discretion in determining whether childrenare at risk for a particular kind of harm given their age and the environment in which they reside.'" Id. (quoting In re McLean, 135 N.C. App. 387, 395, 521 S.E.2d 121, 126 (1999)). Moreover, "[a]n adjudication of neglect may be based on conduct occurring before a child's birth." Id.
In this case, however, the trial court failed to make any finding that respondents' neglect had resulted in any impairment or substantial risk of impairment to Andrew. Because of the absence of such findings, we must remand for further findings of fact on that issue. See In re E.P., M.P., 183 N.C. App. 301, 307, 645 S.E.2d 772, 775-76 (upholding trial court's dismissal of juvenile petitions because there was no evidence that parents' substance abuse had harmed children or created substantial risk of harm), aff'd per curiam, 362 N.C. 82, 653 S.E.2d 143 (2007).
Respondents contend that we should simply reverse the decision below since the record contains insufficient competent evidence of neglect at the time of the adjudication hearing. Respondents have focused on the wrong time frame. In an initial adjudication proceeding, in contrast to the dispositional stage, the trial court "is limited to a determination of the items alleged in the petition." In re A.B., 179 N.C. App. 605, 609, 635 S.E.2d 11, 14 (2006) (holding that trial court did not err in concluding "that the relevant time period for adjudication was from the birth of the child to the filing of the petition"). Thus, the question presented by this case is whether Andrew was a neglected child at the time CCDSS took custody of him in March 2007. The record contains evidence that would support  although not require  such a finding of neglect. We, therefore, vacate the order and remand for further findings of fact.

II
Nonetheless, we must address respondents' further arguments regarding the trial court's findings of fact in order to determine which of the existing findings may properly still be considered on remand. Respondents both contend that the trial court erred in making findings regarding Andrew's siblings because their circumstances are not relevant to the question whether Andrew was a neglected juvenile.
This contention overlooks the portion of the statutory definition of a neglected juvenile providing that "it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home." N.C. Gen. Stat. § 7B-101(15). See In re A.S., ___ N.C. App. ___, ___, 661 S.E.2d 313, 320 (2008) (holding that trial court "was permitted, although not required, to conclude that [the juvenile] was neglected based on evidence that respondent had abused [other children]"); In re P.M., 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005) (holding that trial court properly considered parents' prior care of other children in making adjudication of neglect); In re E.N.S., 164 N.C. App. 146, 150, 595 S.E.2d 167, 170 (upholding adjudication of neglect that was based in part on "circumstances regarding respondent's oldest child being adjudicated neglected and dependent"), disc. review denied, 359 N.C. 189, 606 S.E.2d 903 (2004). Thus, in determining whether Andrew was neglected, the trial court could properly consider the prior neglect adjudication as to Andrew's siblings and the care given those children.
Respondents next argue that the trial court erred in incorporating by reference in its findings of fact the report of Dr. Karin Yoch. This Court has explained that "although the trial court may properly incorporate various reports into its order, it may not use these as a substitute for its own independent review." In re M.R.D.C., 166 N.C. App. 693, 698, 603 S.E.2d 890, 893 (2004), disc. review denied, 359 N.C. 321, 611 S.E.2d 413 (2005). Thus, because a trial court "may not delegate its fact finding duty[,]" a court "should not broadly incorporate . . . written reports from outside sources as its findings of fact." In re J.S., 165 N.C. App. 509, 511, 598 S.E.2d 658, 660 (2004) (emphasis added).
In this case, the trial court did not delegate its fact-finding responsibility. The court made the following finding of fact regarding Dr. Yoch and her report:
Dr. Karin Yoch, a psychologist, is recognized by this Court as an expert in psychology qualified to perform psychological evaluations. Dr. Yoch completed psychological evaluations on both Respondent mother and Respondent father. Her findings are included in a report submitted to the Court and the findings in her report are included herein as though fully set forth as Findings of Fact.
The trial court then continued its order with the following finding of fact: Based upon Dr. Yoch's report the Court specifically finds:
a) Respondent mother takes Percosets [sic] for back pain.
b) Respondent mother has a past history of marijuana use.
c) Respondent mother has significant mental health issues and personality traits which have interfered with her ability to profit from treatment to the degree necessary that she would be capable of parenting.
d) Respondent mother suffers from dysthymic disorder, panic disorder, obsessive compulsive disorder, specific phobias, cannabis dependence and paranoid personality disorder. These mental health issues impair her ability to parent.
e) Respondent father has "serious" substance and alcohol problems. He suffers from dysthymic disorder, anxiety disorder and anti-social disorder.
f) Respondent mother does not think smoking marijuana is bad.
g) Respondent mother takes no responsibility for her role in neglecting her children.
h) Respondent mother and Respondent father have been violent with each other in the presence of the children.
The trial court's incorporation of Dr. Yoch's report served the same purpose as if the court had summarized the contents of that report in order to describe the evidence before it _ much like an order's summarizing what a witness testified. Although the first finding of fact does state that "the findings in [Dr. Yoch's]report are included herein as though fully set forth as Findings of Fact[,]" which could be read as the delegation of fact-finding prohibited by J.S., the finding of fact appearing immediately afterwards demonstrates that the trial court did not just adopt Dr. Yoch's findings as its own findings of fact, but rather made independent findings of fact based on the evidence of Dr. Yoch's conclusions. Thus, although the drafting of the order could have been more precise, the trial court's incorporation of the report was not in error. See In re C.M., 183 N.C. App. at 212-13, 644 S.E.2d at 593-94 (holding that the trial court did not improperly incorporate the social worker's report, the GAL's report, and psychological evaluations when it set them out and then made subsequent independent findings).
Respondents also contend that many of the trial court's findings of fact are not supported by competent evidence. After careful review of respondents' contentions and the record, we agree that certain portions of the findings of fact are not supported by the evidence presently in the record.
First, in finding of fact 8, the trial court stated that "[t]here is no credible evidence before the Court that Respondent mother suffers from any of these ailments" for which respondent mother was prescribed Percocet. Respondent mother's physician Dr. Holt testified that he had prescribed Percocet for her when she complained of back pain and that she had been injured after some physical activity. The record contains no evidence from any other physician, or other witness competent to address this issue suggesting that respondent mother did not suffer from physical conditions warranting a prescription for Percocet. Given the record, the trial court's finding constitutes speculation.
In finding of fact 13, the trial court stated:
This family has a child protective services history dating back to the year 2000 prior to the birth of [Andrew]. Throughout this Child Protective Service history, the continuing and consistent issues have been domestic violence between the Respondents in the presence of the children; drug abuse and other drug activity including growing marijuana, selling and transporting drugs; maintaining firearms within reach of the juveniles; failure to provide needed services to the juveniles; lack of employment; lack of cooperation and assaultive behavior at school and at the mental health center; and poor parenting.
While the record contains evidence regarding specific incidents of the behavior described in finding of fact 13, the record does not support a finding that this behavior occurred continuously and consistently from 2000 through the date of the hearing. It appears that this finding may be founded on information contained in the court files for Andrew's siblings. The trial court did not, however, take judicial notice of those records, and they are not otherwise part of the record in this case. This finding of fact may be accurate, but it is not supported by the record as it currently exists in this case.[2] Respondent father challenges the portion of finding of fact 19(e) stating that he has "'serious' substance and alcohol problems." Respondent father argues that the record does not indicate that he has an alcohol problem. Although the record does support a finding that respondent father had serious substance abuse problems, the only reference to alcohol is in Dr. Yoch's report, where she stated that respondent father told her he drank when he was younger, but has little interest in alcohol now and does not drink. Thus, the evidence does not support a finding that respondent father has a serious alcohol problem.
We also agree that finding of fact 20 is not supported by evidence to the extent that it finds that respondent mother has "chosen not to seriously seek nor comply with intense, long-term treatment for [her] mental health and substance abuse issues." The record contains evidence indicating that respondent mother has attended therapy consistently for two years for her mental health issues and that she has participated in other group therapy, completed anger management training, and provided drug screens when requested by CCDSS, all of which produced negative results. Respondent mother's therapist also testified that she did not need further treatment "in the area of substance abuse" and characterized respondent mother's participation in therapy as "full and complete." We have found nothing else in the record that would support a finding that respondent mother did not seriously seek or comply with treatment for mental health and substance abuse issues.
Finally, respondents challenge findings of fact 6 and 7 regarding the traffic stop on 15 March 2007, which state:
6. After the car was stopped, it was searched, and traces of marijuana were found in the floor of the car, in the passenger seat and on the arm rest between the passenger seat and drivers [sic] seat, along with plastic baggies containing J & B rolling papers. Also found in the car was an empty pill bottle prescribed to Linda Alston for Oxycotin [sic]. The date of the prescription was March 2, 2007 and it was originally filled with 101 pills. Another pill bottle was found containing 181 Oxycotin [sic]. It was in the name of James Howard and it was filled on November 11, 2007. Respondent mother carried $680.00 in cash in her purse.
7. James Howard testified that he takes 180 Oxycotin [sic] pills each month due to chronic pain. It is unanswered by Respondents why a prescription filled on November 11, 2007 would still contain 181 Oxycotin [sic] pills and would be in the possession of Respondent parents. It is likewise unanswered by Respondent parents why a prescription for 101 Oxycotin [sic] pills prescribed on March 2, 2007 would be empty on March 15, 2007 and would be in the possession of Respondent parents. From this evidence, the Court can and does conclude that Respondent parents were illegally in possession of Oxycotin [sic].
Respondents acknowledge that the record contains evidence to support these findings, but argue that the evidence relied on by the trial court in making those findings was not competent because it was inadmissible hearsay. At the adjudication hearing, the officers who stopped and searched respondents testified that they found a prescription bottle bearing the name of James Howard and containing 101 Oxycontin pills, and another empty prescription bottle bearing the name of Linda Alston. The officers were not, however, able to remember the dates of either prescription, what Linda Alston's prescription was for, or what quantity of Oxycontin James Howard was prescribed. The trial court allowed one of the officers to telephone the Siler City Police Department to obtain that information. After making the phone call, the officer testified, over objection, that the sergeant in charge of the evidence room told him that the empty bottle with Linda Alston's name on it was filled on 2 March 2007 and was for 100 units of Oxycodone. He also testified that he was told that James Howard's prescription had been filled on 24 November 2006 and that it had been for 180 pills.
We agree with respondents that the officer's testimony regarding what the sergeant told him over the telephone was hearsay. See N.C.R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). As such, it was inadmissible under N.C.R. Evid. 802 unless it fell within one of the exceptions to the hearsay rule. Neither CCDSS nor the GAL has pointed to any applicable exception, and we have been unable to identify one. The testimony was, therefore, inadmissible. See, e.g., In re Mashburn, 162 N.C. App. 386, 391, 591 S.E.2d 584, 588 (holding testimony as to what victim told witness during the witness' investigation of the crime was inadmissible hearsay), appeal dismissed, 603 S.E.2d 884 (2004); Thomas v. State Bd. of Alcoholic Control, 258 N.C. 513, 515, 128 S.E.2d 884, 886 (1963) (holding testimony by officers as to what accused told them when they stopped him was inadmissible hearsay). As a result, findings of fact 6 and 7 are unsupported by competent evidence to the extent they recite the dates that the prescriptions were filled, the drug in the Alston bottle, and the amounts originally contained in the bottles.
As to the other findings of fact assigned as error  which include those relating to respondents' progress in therapy, their parenting skills, their psychological disorders, their history with CCDSS, their attitudes toward drugs and tendencies for violence, the credibility of respondents' witnesses, and the circumstances surrounding the stop on 15 March 2007  our review of the record shows that they are supported by competent evidence. Respondents have challenged the trial court's determinations regarding credibility, the weight given various pieces of evidence, and the inferences to be drawn from the evidence. As to the inferences, our review of the evidence reveals that they were reasonable. In re Gleisner, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365-66 (2000) ("If different inferences may be drawn from the evidence, the trial judge must determine which inferences shall be drawn and which shall be rejected."). With respect to the credibility and weight determinations, those issues are solely for determination by the trial court. Id., 539 S.E.2d at 365. We note, however, that a number of these findings relate to events and circumstances that occurred subsequent to the filing of the petition. Although those findings are relevant to the disposition stage of this case, they are not pertinent to the adjudication, except to the extent they reflect on Andrew's status as of the date of the petition.

Conclusion
In sum, we vacate the order and remand to the trial court for its determination whether Andrew was impaired or at substantial risk of impairment as a result of respondents' neglect as of the time the petition was filed. In considering this issue, the trial court is limited to those findings of fact we have held to be supported by competent evidence and any additional findings of fact it may make. We leave to the discretion of the trial court whether to accept further evidence on remand.
Vacated and remanded.
Judges STEELMAN and STEPHENS concur.
Report per Rule 30(e).
NOTES
[1] The pseudonym "Andrew" has been used throughout the opinion to protect the privacy of the child and for ease of reading.
[2] The GAL, in arguing that finding of fact 13 is supported, relies on the allegations in the juvenile petition and the GAL report. The petition is not evidence and cannot constitute support for the trial court's findings of fact. See In re R.P.M., 172 N.C. App. 782, 787, 616 S.E.2d 627, 631 (2005) (stating petition is like a criminal indictment and its purpose is to give notice to juvenile and parents); In re Griffin, 162 N.C. App. 487, 493, 592 S.E.2d 12, 16 (2004) (stating juvenile petition serves as the pleading). With respect to the GAL Report, it does not appear that the report was admitted with respect to the adjudication proceeding (as opposed to the disposition), although the record is not entirely clear.