TYSON, Judge, dissenting.
The majority's opinion affirms the trial court's adjudication that both S.B. and C.B. are neglected juveniles. The trial court's findings of fact do not support this conclusion of law. The majority's opinion also holds Mother has failed to carry her burden to show she received ineffective assistance of counsel. Prior precedents guide this Court not to make such a factual determination based on the paucity of the record before us. I respectfully dissent.
I. Standard of Review
This Court reviews a trial court's adjudication of neglect to determine: "(1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact [.]" In re Gleisner, 141 N.C.App. 475, 480, 539 S.E.2d 362, 365 (2000) (citations and internal quotation marks omitted). We review the trial court's conclusion that a juvenile is abused, neglected, or dependent de novo on appeal. In re N.G., 186 N.C.App. 1, 13, 650 S.E.2d 45, 53 (2007) (citations and internal quotation marks omitted), aff'd per curiam, 362 N.C. 229, 657 S.E.2d 355 (2008).
II. Adjudication of Neglect
Mother argues the trial court erred by finding S.B. and C.B. are neglected juveniles. She contends the trial court's findings of fact are not supported by clear, cogent, and convincing evidence. The majority's opinion states "[t]he binding facts ... support the trial court's ultimate conclusion that S.B. was neglected." I disagree.
*216 N.C. Gen. Stat § 7B-101(15) defines a "neglected juvenile" as:
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; ... or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare.... In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where ... another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
N.C. Gen.Stat. § 7B-101(15) (2013).
Our Supreme Court has recognized "not every act of negligence on the part of parents ... constitutes 'neglect' under the law and results in a 'neglected juvenile.' " In re Stumbo, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003) (holding an anonymous call reporting an unsupervised, naked two-year-old in the driveway, without more, does not constitute neglect as intended by the legislature). The determination of neglect is a fact-specific inquiry. A parent's conduct must be reviewed *219 on a case-by-case basis, taking into consideration the totality of the circumstances. Speagle v. Seitz, 354 N.C. 525, 531, 557 S.E.2d 83, 86 (2001), cert. denied, 536 U.S. 923, 122 S.Ct. 2589, 153 L.Ed.2d 778 (2002).
The trial court must find "some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline" in order to adjudicate a juvenile as neglected. In re Safriet, 112 N.C.App. 747, 752, 436 S.E.2d 898, 901-02 (1993) (citations and internal quotation marks omitted). Also, when determining whether a juvenile is neglected, "the trial judge may consider a parent's complete failure to provide the personal contact, love, and affection that exists in the parental relationship." In re Yocum, 158 N.C.App. 198, 204, 580 S.E.2d 399, 403 (citation and quotation marks omitted), aff'd per curiam, 357 N.C. 568, 597 S.E.2d 674 (2003).
A. S.B.'s Adjudication of Neglect
No allegations or evidence offered by DSS tend to show Mother is unfit or has abused either of her daughters, abuses drugs or alcohol, deprived them of financial support, transportation, food, clothing, shelter, medical care, educational opportunities, abandoned them by not *217 giving her time and resources, or failed to show parental love, comfort, care, or discipline. What is before us is a disagreement between the daughters' mother and a doctor and social worker over alternative recommendations of preferred therapies and treatment to address S.B.'s conduct.
N.C. Gen.Stat. § 7B-101(15) is not intended and cannot be used by DSS to gain a corrosive leverage over a parent's disagreements with alternative treatments and therapies for her child. Such an application erodes a parent's "fundamental right ... to make decisions concerning the care, custody, and control of their children." Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49, 57 (2000) (citations omitted). The facts here are no different than a parent who refuses a doctor's or counselor's recommendation to prescribe and administer Ritalin, a psychotropic drug, to her child, or a parent who refuses to allow blood transfusions, an organ transplant, or other invasive procedures to be performed or administered to her child without consent.
Reasonable people may disagree over the best course of treatment or conduct to follow. When that occurs, the fundamental rights and decision of the parent prevail over the recommendations of the non-parent and the State. The fact that the parent disagrees with the doctor, counselor, or social worker is not neglect. The parent's decision is legally and constitutionally entitled to support, deference and respect by the State and its actors. In the end, in the absence of any showing that the parent is unfit or refusing to allow emergency, life-saving treatment, the parent's final decision over the choices among alternative treatments and therapies to help her child trumps those favored by DSS. Id.
The "parental liberty interest 'is perhaps the oldest of the fundamental liberty interests' the United States Supreme Court has recognized." Owenby v. Young, 357 N.C. 142, 144, 579 S.E.2d 264, 266 (2003) (quoting Troxel, 530 U.S. at 66, 120 S.Ct. at 2060, 147 L.Ed.2d at 57 ). The Supreme Court of the United States held this liberty interest must be given great deference, stating:
so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.
Troxel, 530 U.S. at 68-69, 120 S.Ct. at 2061, 147 L.Ed.2d at 58 (citation omitted).
*218 Our Supreme Court also recognized the importance of this fundamental liberty interest in Owenby v. Young, 357 N.C. at 145, 579 S.E.2d at 266.
We acknowledged the importance of this liberty interest nearly a decade ago when this Court held: absent a finding that parents (i) are unfit or (ii) have neglected the welfare of their children, the constitutionally protected paramount right of parents to custody, care, and control of their children must prevail. The protected liberty *220 interest complements the responsibilities the parent has assumed and is based on a presumption that he or she will act in the best interest of the child.
Id. (citations and internal quotation marks omitted). See also Petersen v. Rogers, 337 N.C. 397, 403-04, 445 S.E.2d 901, 905 (1994) ; Price v. Howard, 346 N.C. 68, 79, 484 S.E.2d 528, 534 (1997).
Here, Mother is informed and well-aware of S.B.'s mental health needs, and is exercising her constitutionally protected right to "custody, care, and control" of her children. Owenby, 357 N.C. at 145, 579 S.E.2d at 266. The record reflects Mother's prevailing right to prefer S.B.'s "issues [to] be handled at home[.]" Mother's preference for in-home treatment for S.B. appears to be a result of her "belie[f] that the hospital 'reprogrammed' [S.B.] to turn against" Mother.
Mother has taken S.B. to Copestone each time she required hospitalization. This evidence of Mother clearly responding to the dire needs of her severely mentally ill child must not be overlooked. Mother also recognized SW Flores had a "calming energy" around S.B., and allowed him to conduct home visits. Mother declined to participate in a comprehensive clinical assessment, because she found it "offensive." Mother has also expressed concern that "she believed that the Department's treatment plans caused [S.B.] to have seizures, and that these treatment plans endangered her daughter."
Mother's actions and choices regarding the "custody, care, and control" of her children is a utilization of her "protected liberty interest." Id. The fact that Mother's choices for S.B.'s care differ from the suggestions from S.B.'s medical providers cannot diminish the presumption that she is acting in the best interest of her children. The record certainly does not lend any support to a finding that Mother is unfit or neglects the welfare of her children. Id. This Court sets a dangerous precedent if it allows a difference of opinion regarding mental health recommendations to erode or supplant this historic and fundamental liberty interest *219 for parents to make critical and binding decisions over the care of their children.
The majority opinion's assumption that the trial court's findings of fact "support the trial court's ultimate conclusion that S.B. [and C.B. were] neglected" is error and should be reversed. These findings are not sufficient to defeat the paramount presumption of "the right of parents to establish a home and to direct the upbringing and education of their children." Owenby, 357 N.C. at 144, 579 S.E.2d at 266. See Meyer v. Nebraska, 262 U.S. 390, 399-400, 43 S.Ct. 625, 626-27, 67 L.Ed. 1042, 1045-46 (1923) (noting the Fourteenth Amendment's guarantee against deprivation of life, liberty or property without due process of the law includes an individual's right to establish a home and bring up children).
B. C.B.'s Adjudication of Neglect
The majority's opinion concludes the trial court properly adjudicated C.B. and S.B. as neglected juveniles. This conclusion is based on the notion that "Mother was unwilling or unable to obtain meaningful mental health services for S.B. while S.B. was at home with her and C.B., thereby continuing to expose C.B. to S.B.'s behaviors unabated."
The fact that a sibling lives in a family home with a special needs child does not constitute "an environment injurious to the juvenile's welfare[.]" N.C. Gen.Stat. § 7B-101(15). The lives of any parent or sibling raising, caring for, and living in a home with a special needs child or other family member will undoubtedly be impacted by, and in many cases severely impacted by, the inordinate amount of time, resources and familial emotions expended for the care and upbringing of a family member with special needs. While such home environments may be challenging and cause siblings to carry these experiences into their adult lives, it is a gross abuse for DSS to assert that being exposed to and helping care for a special needs sibling supports either an allegation or an adjudication of neglect.
The trial court's findings of fact show Mother disagrees with the alternative treatment recommendations for S.B. Mother has a fundamental and constitutionally protected right to remain at the helm of rearing and caring for her children. Mother should not be chastised and penalized for exercising her *221 "constitutionally protected paramount right ... to custody, care, and control of [her] children" by disagreeing with alternative treatment recommendations. Owenby, 357 N.C. at 145, 579 S.E.2d at 266. The clear, cogent, and convincing evidence before this Court does not support a conclusion that either S.B. or C.B. are neglected juveniles. In the absence of any allegation or evidence that Mother is unfit, DSS *220 cannot use the special needs of one child to assert a sibling is neglected by sharing the same home.
III. Ineffective Assistance of Counsel
Mother argues the trial court's order should also be vacated because she was provided ineffective assistance of counsel. Mother contends her attorney's failure to "review [S.B.'s] medical records" or subpoena the hospital psychiatrist and social worker during the adjudication amounts to ineffective and deficient representation and resulted in severe prejudice to her. Whether or not this is correct cannot be determined from the record before us.
The majority's opinion concludes Mother has failed to carry her burden to "show that counsel's performance fell short of the required standard [.]" State v. Fletcher, 354 N.C. 455, 482, 555 S.E.2d 534, 551 (2001), cert. denied, 537 U.S. 846, 123 S.Ct. 184, 154 L.Ed.2d 73 (2002). I disagree.
It is well established that ineffective assistance of counsel claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing. Thus, when this Court reviews ineffective assistance of counsel claims on direct appeal and determines that they have been brought prematurely, we dismiss those claims without prejudice, allowing [the party] to bring them pursuant to a subsequent motion for appropriate relief in the trial court.
State v. Thompson, 359 N.C. 77, 122-23, 604 S.E.2d 850, 881 (2004) (citations and internal quotation marks omitted), cert. denied, 546 U.S. 830, 126 S.Ct. 48, 163 L.Ed.2d 80 (2005).
On the record before us, this Court can only speculate whether counsel for Mother's failure to review S.B.'s medical records and subpoena relevant witnesses to testify at the hearing "fell below an objective standard of reasonableness." State v. Braswell, 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985) (citation omitted). In accordance with established precedents, I vote to remand this issue to the trial court for additional hearing, evidence, and findings of fact to further develop the record on this issue.
*221 IV. Conclusion
The trial court's findings of fact do not support its ultimate conclusion that S.B. and C.B. are neglected juveniles. The record clearly shows Mother repeatedly sought medical treatment for S.B. when necessary. Mother's authority and decision to disagree with the recommendations of some of the treatment providers and the State's actors is a valid and protected exercise of her parental rights. Her decisions are constitutionally protected and insufficient to support an adjudication of neglect. Owenby, 357 N.C. at 145, 579 S.E.2d at 266.
Having S.B.'s sibling, C.B., present in the home during the daily living and sharing in S.B.'s struggles does not constitute neglect. DSS cannot lawfully assert these allegations are sufficient to usurp Mother's constitutionally protected rights to make final decisions over "the custody, care, and control of [her] children[,]" which must be respected and supported by the State. Id. It is preposterous for DSS to assert or for the trial court to find that C.B. is neglected merely by living in the same home with her twin sister, who has special needs.
This case and S.B.'s needs are not a game over who wins and who loses. It concerns who is the ultimate decision-maker when choosing among alternative treatments for S.B.'s care. The Constitution and the Supreme Court of the United States, and the Supreme Court of North Carolina have repeatedly answered this issue in favor of the fit parent.
The record before us is insufficient to establish whether Mother was saddled with ineffective assistance of counsel at the adjudication and disposition. I vote to reverse *222 the trial court's adjudications of neglect and to remand for hearing on the ineffective assistance of counsel claim. I respectfully dissent.