STROUD, Judge.
 

 *442
 
 J.C.D. ("Respondent") appeals from an involuntary commitment order which committed her to Halifax Regional Medical Center ("HRMC") for up to 30 days. We vacate the district court's order and remand for additional findings of fact and entry of a new order.
 

 I. Background
 

 Respondent, age 76, presented to the emergency room with bruising on the left side of her mouth and eyes and rambling speech. Respondent was initially examined by Dr. E. Conti at HRMC. Dr. Conti noted Respondent had stated her daughter had hit her, and she had rambling speech focused on her daughters trying to take advantage of her. Dr. Conti recounted Respondent had a history of "delusional" disorder and determined Respondent was "mentally ill," "dangerous to self," and "dangerous to others."
 

 On the Examination and Recommendation to Determine Necessity for Involuntary Commitment Form ("commitment form"), Dr. Conti states, "daughter reports that [Respondent] has been doing dangerous things such as walking long distances to the store in a bad neighborhood, telling strangers her personal buisness [sic] and inviting strangers into her home. Daughter also reports that [Respondent's] guns were take [sic] away from her due to threatening behavior."
 

 Respondent was examined by Dr. Ijaz the following day to determine the continued necessity for involuntary commitment. Dr. Ijaz determined Respondent was "mentally ill," "dangerous to self," and "dangerous to others." The commitment form completed by Dr. Ijaz indicates "[Respondent] presents with occular [sic] and facial bruising. She maintains that her daughter assulted [sic] her because she would not sell her house." Dr. Ijaz found Respondent was "at risk of causing harm to herself or others due to her impaired judgement and delusional thinking and requires inpatient hospitalization for stabilization and treatment."
 

 Dr. Conti signed an affidavit and petition requesting involuntary commitment of Respondent on 8 March 2018. An involuntary commitment
 
 *443
 
 hearing was held on 14 March 2018. Respondent was represented by counsel. The only witness who testified for the hospital was Latasha Motley, who was employed by HRMC. Respondent also testified. All parties indicate the transcript is unintelligible regarding Ms. Motley's specific job title at HRMC. Ms. Motley identified her role as being involved with "psychiatric discharge," but she also testified about Respondent's course of care in the hospital. Petitioner also offered as evidence a report by Dr. Ijaz, who had evaluated and treated Respondent. The
 
 *189
 
 report was admitted without objection from respondent.
 

 The trial court announced at the conclusion of the hearing it found there were facts supporting the involuntary commitment, and it would incorporate by reference as findings in the order the report signed by Dr. Ijaz and offered by Ms. Motley. The trial court also announced that it found respondent mentally ill and a danger to herself and others and committed her for up to 30 days.
 

 The court's written order, filed after the hearing, is on North Carolina Administrative Office of the Courts form order SP-203. In the "Findings" portion of the form,
 
 [1]
 
 box number four was marked:
 

 Based on the evidence presented, the Court
 

 4. by clear, cogent, and convincing evidence, finds as facts all matters as set out in the physician's/eligible psychologist's report specified below, and the report is incorporated by reference as findings.
 

 Date of Last Examiner's Report
 
 3-14-18
 

 Name of Physician/Eligible Psychologist
 
 Dr. Ijaz
 

 The trial court also marked box five:
 

 5. by clear, cogent, and convincing evidence, finds these other facts:
 

 ...
 

 *444
 
 facts supporting the involuntary commitment:
 

 All facts as set out in the physician's report date 3-14-18. The physician's report shall be incorporated by reference as evidence to support this order.
 

 Dr. Ijaz's letter which was incorporated by reference stated:
 

 [Respondent] is a 76 year old female admitted to Halifax Regional on March 4, 2018, under Involuntary Commitment Order, with a diagnosis of Possible Neurocognitive D/O (Alzheimer's disease ). Patient presented to the Emergency Care Center on this date with reports of confusion, auditory and visual hallucinations, flight of ideas and confabulation prior to admission. Patient was checked and has been cleared for all things medical that could produce these symptoms in patients.
 

 Psychiatric Medications
 

 Xanax 0.5mg BID PO Antianxiety
 

 Since being on the unit, patient has shown some improvement. However she still presents with intermittent episodes of confusion and paranoia. She is easily redirected at this time with no agitation or verbally aggressive behaviors as initially presented upon admission to the unit. Patient is compliant with medications and unit activities at present. In my opinion, patient is a danger to self, due to level of confusion and confabulation. I recommend that patient remain on the inpatient psychiatric unit for up to 30 days for further stabilization and to formulate an effective discharge plan. Patient's daughter petition the court and became her legal guardian so that she can make necessary decisions for patient's care due to change in patient's mental status and concerns for her safety.
 

 The court concluded Respondent was mentally ill and a danger to herself and others. Respondent timely appealed.
 

 II. Jurisdiction
 

 An appeal of right lies with this Court from a final judgment of involuntary commitment. N.C. Gen. Stat. § 7A-27(b)(2) (2017) ;
 

 *445
 
 N.C. Gen. Stat. § 122C-272 (2017). "[A] prior discharge will not render questions challenging the involuntary commitment proceeding moot. When the challenged order may form the basis for future commitment or may cause other collateral legal consequences for the respondent, an appeal of that order is not moot."
 
 In re Webber
 
 ,
 
 201 N.C. App. 212
 
 , 217,
 
 689 S.E.2d 468
 
 , 472-73 (2009) (citations and quotation marks omitted). This appeal is not moot even though Respondent's commitment period has expired.
 

 *190
 
 III. Issues
 

 Respondent argues the trial court erred by ordering her commitment, where the only findings of fact were solely those incorporated from and set out in the non-testifying physician's report. She asserts findings were insufficient to support the conclusion she was dangerous to herself and others. Respondent also asserts a denial of her statutory right to effective assistance of counsel.
 

 IV. Standard of Review
 

 The trial court is required to support its findings of fact and ultimate conclusion that Respondent "is mentally ill and dangerous to self ... or dangerous to others" by "clear, cogent and convincing evidence." N.C. Gen. Stat. § 122C-268(j) (2017). Further, "[t]he court shall record the facts that support its findings."
 

 Id.
 

 On appeal of a commitment order our function is to determine whether there was any competent evidence to support the "facts" recorded in the commitment order and whether the trial court's ultimate findings of mental illness and dangerous to self or others were supported by the "facts" recorded in the order.
 

 In re Whatley
 
 ,
 
 224 N.C. App. 267
 
 , 270,
 
 736 S.E.2d 527
 
 , 530 (2012) (citation omitted);
 
 see also
 

 In re Collins
 
 ,
 
 49 N.C. App. 243
 
 , 246,
 
 271 S.E.2d 72
 
 , 74 (1980) ("On appeal of a commitment order our function is to determine ... whether the trial court's ultimate findings of mental illness and dangerous to self or others were supported by the 'facts' recorded in the order.").
 

 V. Admissibility of Physician's Report
 

 Respondent first argues that "[t]he admission of Dr. Ijaz's report, without Dr. Ijaz's presence at the hearing, constituted a denial of J.D.'s right to confront and cross-examine the witness." Respondent contends that based upon N.C. Gen. Stat. § 122C-268(f), Dr. Ijaz's report was
 
 *446
 
 improperly admitted as evidence because she did not appear at the hearing to testify.
 

 N.C. Gen. Stat. § 122C-268(f) provides that "[c]ertified copies of reports and findings of physicians and psychologists and previous and current medical records are admissible in evidence, but the respondent's right to confront and cross-examine witnesses may not be denied." N.C. Gen. Stat. § 122C-268(f) (2017). Respondent suggests that because her "right to confront and cross-examine witnesses may not be denied," Dr. Ijaz's report could not be admitted unless she appeared to testify. Respondent's counsel failed to object to admission of Dr. Ijaz's report as evidence under N.C. Gen. Stat. § 122C-268(f) or for any other reason. Although Respondent had a right to object to admission of the report without Dr. Ijaz's testimony, she waived this right by her failure to object. N.C. R. App. P. 10(a)(1). Respondent's interpretation of the statute-that she has a non-waivable right for the physician to appear and testify-is the opposite of what the statute allows. N.C. Gen. Stat. § 122C-268(f) specifically allows the physician's report to be admitted into evidence. Since respondent did not object to admission of the report, and she did not assert her right to have Dr. Ijaz appear to testify, the trial court did not err by admitting and considering the report.
 

 VI. Sufficiency of Findings of Fact under N.C. Gen. Stat. § 122C-268(j)
 

 The trial court's ultimate findings of mental illness and dangerous to self or others must be based upon clear, cogent, and convincing evidence and be "supported by the 'facts' recorded in the order."
 
 Whatley
 
 ,
 
 224 N.C. App. at 270
 
 ,
 
 736 S.E.2d at 530
 
 . "But unlike many other orders from the trial court, these ultimate findings, standing alone, are insufficient to support the order; the involuntary commitment statute expressly requires the trial court also to record the facts upon which its ultimate findings are based."
 
 In re W.R.D.
 
 , --- N.C. App. ----, ----,
 
 790 S.E.2d 344
 
 , 347 (2016) (citation and quotation marks omitted). The order for Respondent's involuntary commitment indicates the trial court had "incorporated by reference" Dr. Ijaz's report as the "clear, cogent, and convincing evidence" of Respondent's mental illness and danger to herself. The facts found by the trial court to support its conclusions and order were simply the facts set out in Dr. Ijaz's letter and did not include any findings based upon Ms. Motley's or respondent's testimony at the hearing. Respondent does not challenge the specific facts
 
 *191
 
 as incorporated from Dr. Ijaz's letter as unsupported by the evidence but argues here that the incorporation alone is not sufficient under N.C. Gen. Stat. § 122C-268(j). Thus, the issue is whether the incorporation by reference
 
 *447
 
 of Dr. Ijaz's report was sufficient to comply with the statutory mandate for the trial court to "record the facts that support its findings." N.C. Gen. Stat. § 122C-268(j). Given the higher standard for findings of fact set forth by N.C. Gen. Stat. § 122C-268(j) than in many other types of orders, we agree and hold that the findings are not adequate to support the ultimate conclusion.
 

 Based upon the incorporation of Dr. Ijaz's letter, the trial court made findings that Respondent "is a 76 year old female admitted to Halifax Regional on March 4, 2018; she had a "diagnosis of Possible Neurocognitive D/O (Alzheimer's disease );" she "presented to the Emergency Care Center on this date with reports of confusion, auditory and visual hallucinations, flight of ideas and confabulation prior to admission;" she "was checked and has been cleared for all things medical that could produce these symptoms in patients;" she had a prescription for "Xanax 0.5mg BID PO Antianxiety;" she "has shown some improvement" while in the hospital but "she still presents with intermittent episodes of confusion and paranoia;" "She is easily redirected at this time with no agitation or verbally aggressive behaviors as initially presented upon admission to the unit;" and she was "compliant with medications and unit activities at present." The trial court also found by incorporation of Dr. Ijaz's report that Respondent "is a danger to self, due to level of confusion and confabulation" and that she should "remain on the inpatient psychiatric unit for up to 30 days for further stabilization and to formulate an effective discharge plan."
 

 We must therefore consider whether the trial court's findings of fact, made by incorporation of Dr. Ijaz's report, were sufficient to comply with the statutory requirements to "record the facts which support its findings." N.C. Gen. Stat. § 122C-268(j). Certainly, the trial court's order included more detail than those cases in which the only findings were 'checking the boxes" on the form, with no other indication of the facts upon which it relied. Merely "placing an 'X' in the boxes" of the form order has been disapproved repeatedly, as noted in
 
 Matter of Jacobs
 
 , where respondent
 

 assign[ed] as error the district court's failure to make findings of fact to support its commitment order. G.S. 122-58.7(i) provides in unambiguous terms: "The court shall record the facts which support its findings." This Court has held on numerous occasions that the district court must record the facts necessary to support its findings. We note that the commitment order in the case
 
 sub judice
 
 is essentially identical to that order found to
 
 *448
 
 be insufficient in
 
 In Re Koyi, supra
 
 . Merely placing an "X" in the boxes on the commitment order form does not comply with the statute.
 

 38 N.C. App. 573
 
 , 575,
 
 248 S.E.2d 448
 
 , 449 (1978). It is not uncommon, and is specifically provided as an option on AOC Form 203 for the trial court to incorporate the physician's report as at least a portion of the findings of fact in the order. Yet where there is "directly conflicting evidence on key issues," incorporation of a document or other evidence is not sufficient for this Court to determine if the trial court resolved the conflicts in the evidence to the required standard and burden of proof by petitioner, and we must remand for findings of fact resolving the factual issues.
 
 See
 

 In re Gleisner
 
 ,
 
 141 N.C. App. 475
 
 , 480,
 
 539 S.E.2d 362
 
 , 365-66 (2000) ("These findings are simply a recitation of the evidence presented at trial, rather than ultimate findings of fact. In a nonjury trial, it is the duty of the trial judge to consider and weigh all of the competent evidence, and to determine the credibility of the witnesses and the weight to be given their testimony. If different inferences may be drawn from the evidence, the trial judge must determine which inferences shall be drawn and which shall be rejected. Where there is directly conflicting evidence on key issues, it is especially crucial that the trial court make its own determination as to what pertinent facts are actually established by the evidence, rather than merely reciting what the evidence may tend to show." (citations
 
 *192
 
 omitted));
 
 see also
 

 In re Allison
 
 ,
 
 216 N.C. App. 297
 
 , 300,
 
 715 S.E.2d 912
 
 , 915 (2011) ("The trial court used a locally modified form involuntary commitment order and in making its findings of fact checked the box stating, 'Based on the evidence presented, the Court by clear, cogent and convincing evidence finds these other facts: Court Finds That The Respondent Meets Criteria For Further Inpatient Commitment.' The trial court did not make any written findings of fact or incorporate by reference either physician's report. Had the trial court utilized the standard Administrative Office of the Courts form involuntary commitment order and entered the findings of fact required by that form, this remand may not have been necessary as the evidence tends to show that respondent is likely mentally ill and potentially dangerous to himself and to others. But, the trial court's checking of a box on its locally modified form is insufficient to support this determination."). If the report incorporated into the order does not include sufficient facts to support the trial court's conclusions, remand may be necessary for additional findings. For example, in
 
 In re Booker
 
 , the respondent's sister, his physician, and respondent testified at the hearing, and there were substantial conflicts in the evidence.
 
 193 N.C. App. 433
 
 ,
 
 667 S.E.2d 302
 
 (2008). The trial court's order incorporated the physician's
 
 *449
 
 report, but that report included minimal information and there were no additional findings to resolve the conflicts in the evidence so remand was necessary:
 

 In its order, the trial court checked the box on the printed form that reads: "Based on the evidence presented, the Court by clear, cogent and convincing evidence finds as facts all matters set out in the physician's report, specified below, and the report is incorporated by reference as findings." The date of the last physician's report was 13 November 2007 and the physician's name listed was Dr. P.R. Chowdhury. The next box on the printed form that provided a section for other findings of fact to be recorded was not checked and no other findings of fact were recorded in the order.
 

 The 13 November 2007 report stated it was Dr. Chowdhury's opinion that Respondent was mentally ill, dangerous to himself, and dangerous to others, but the only "matters set out in" the report as findings by Dr. Chowdhury were that Respondent was a "56 year old white male, with history of alcohol abuse/dependence, admitted with manic episode. He continues to be symptomatic with limited insight regarding his illness." These findings by Dr. Chowdhury "incorporated by reference" in the trial court's order are insufficient to support the trial court's determination that Respondent was dangerous to himself and to others.
 

 Id.
 

 at 437
 
 ,
 
 667 S.E.2d at 304
 
 (brackets omitted). In contrast, this Court has also held that the trial court's incorporation by reference of the physician's report included sufficient facts to support the trial court's conclusion that the respondent presented a "danger to himself."
 
 See
 

 In re Zollicoffer
 
 ,
 
 165 N.C. App. 462
 
 , 468-69,
 
 598 S.E.2d 696
 
 , 700 (2004) ("Judge Senter's involuntary commitment order incorporates Dr. Soriano's examination and recommendation of 3 June 2003 in his findings of fact. In Dr. Soriano's recommendation she states that respondent has a history of chronic paranoid schizophrenia, that respondent admits to medicinal non-compliance which puts him 'at high risk for mental deterioration,' that respondent does not cooperate with his treatment team, and that he 'requires inpatient rehabilitation to educate him about his illness and prevent mental decline.' These findings of fact were not objected to in respondent's assignments of error, thus they are binding on appeal.").
 

 *450
 
 Here, the facts included in Dr. Ijaz's report were more detailed than those in
 
 Booker
 
 , but still did not address conflicts in the evidence or resolve questions of credibility. The trial court's findings did not address Ms. Motley's testimony at all and did not resolve any conflicts in the evidence presented by Respondent's testimony. Respondent testified in her own defense. Her testimony was rambling and not always coherent, but she testified that she had lived alone for over 20 years and was able to take care of herself. She also testified that her daughter, who
 
 *193
 
 worked at the hospital where she was involuntarily committed, was "working together" with the hospital personnel to "permanently put [her] somewhere." "If different inferences may be drawn from the evidence, the trial judge must determine which inferences shall be drawn and which shall be rejected."
 
 Gleisner
 
 ,
 
 141 N.C. App. at 480
 
 ,
 
 539 S.E.2d at 365-66
 
 .
 

 The trier of fact could draw from the evidence an inference that Respondent's daughter was simply seeking to put her away, and, because she worked at the hospital, the physicians there were helping her. Respondent drove and presented herself with physical injuries at the emergency room, but was immediately taken for involuntary commitment evaluation by the nurses who stated Respondent's daughter told them that Respondent was mentally ill. Or the trier of fact could infer that Respondent's paranoia and confusion led her to believe that her daughter was seeking to harm her when she was actually trying to protect Respondent. But only the trial court can draw these inferences or any other potential inferences based on the evidence. This Court does not resolve issues of credibility and "[w]e do not consider whether the evidence of respondent's mental illness and dangerousness was clear, cogent and convincing. It is for the trier of fact to determine whether the competent evidence offered in a particular case met the burden of proof."
 
 Collins
 
 ,
 
 49 N.C. App. at 246
 
 ,
 
 271 S.E.2d at 74
 
 . This Court does not review whether the trial court properly adjudicated all the evidence under the applicable burden of proof and whether its findings of fact support its conclusions. The trial court's order did not resolve the conflicts in the evidence and did not fully state the facts upon which its conclusions rested, so we must remand for additional findings of fact.
 

 VII. Sufficiency of Evidence to Support Findings
 

 We also note that although evidence was presented at the hearing which could, if the trial court adjudicates conflicts in the evidence and makes the required findings of fact, support a conclusion that Respondent was "dangerous to self," there was no evidence she was "dangerous to others." In relevant part, N.C. Gen. Stat. § 122C-3(11) provides that one is "dangerous to self" when:
 

 *451
 
 within the relevant past:
 

 1. The individual has acted in such a way as to show:
 

 I. That he would be unable, without care, supervision, and the continued assistance of others not otherwise available, to exercise self-control, judgment, and discretion in the conduct of his daily responsibilities and social relations, or to satisfy his need for nourishment, personal or medical care, shelter, or self-protection and safety[.]
 

 N.C. Gen. Stat. § 122C-3(11) (2017).
 

 There was evidence that Respondent's daughter was seeking treatment for her because she was dangerous to herself, and she had demonstrated the potential for harming herself most recently by her fall, by which she was actually injured, and frequent calls from neighbors reporting she was wandering in the streets. Ms. Motley testified regarding Respondent's condition upon admission to the hospital and the reasons for her admission:
 

 She came in. She did have the entire left side of her face was bruised. When she initially came into the hospital she told us that her daughter ... had beaten her and she said that had happened before Christmas, a couple weeks or the week before Christmas. Since being on the unit she has come back and said that's not what happened at all, she remembered that she was scrubbing her floor and she slipped and fell and hit her face. It's the confusion and the wandering in the streets as described by her neighbors, her being out in the street and they're afraid that something may happen to her as well so that's why she was actually brought into the hospital for the bruising and the confusion and the wandering.
 

 The evidence tends to show that Respondent was diagnosed with "possible neurocognitive disease disorder which is Alzheimer's disease." She had psychiatric hospitalizations at least twice before for this condition. Dr.
 
 *194
 
 Ijaz noted that respondent's symptoms upon admission were "confusion, auditory and visual hallucinations, flight of ideas, and confabulation." The term "confabulation" as used in the medical context refers to "filling in of gaps in memory through the creation of false memories by an individual who is affected with a memory disorder ... and is unaware that the fabricated memories are inaccurate and false[.]"
 
 *452
 

 Merriam-Webster
 
 , https://www.merriam-webster.com/medical/confabulation (last visited May 1, 2019). Respondent's own testimony at the hearing could also support Dr. Ijaz's findings of confusion, flight of ideas, and confabulation.
 

 But there was no evidence, including in Dr. Ijaz's report, that respondent was dangerous to others. N.C. Gen. Stat. § 122C-3(11) defines "dangerous to others" as:
 

 within the relevant past, the individual has inflicted or attempted to inflict or threatened to inflict serious bodily harm on another, or has acted in such a way as to create a substantial risk of serious bodily harm to another, or has engaged in extreme destruction of property; and that there is a reasonable probability that this conduct will be repeated. Previous episodes of dangerousness to others, when applicable, may be considered when determining reasonable probability of future dangerous conduct.
 

 N.C. Gen. Stat. § 122C-3(11)(b).
 

 There was no evidence that respondent had "inflicted or attempted to inflict or threatened to" harm anyone or of any "previous episodes of dangerousness." The court's conclusions that Respondent is mentally ill and dangerous to self
 
 and others
 
 are based solely upon the incorporated "facts set out in" Dr. Ijaz's letter. But Dr. Ijaz did not state any opinion that Respondent was dangerous "to others;" her opinion was only that "patient is a
 
 danger to self,
 
 due to level of confusion and confabulation." (Emphasis added.) Nor did Ms. Motley testify that Respondent had threatened anyone or presented any danger to others. No evidence was presented to support any findings or conclusion that Respondent was dangerous to others. The trial court's conclusion she was dangerous
 
 to others
 
 was not supported by either the evidence or findings of fact and must be vacated without remand.
 

 VIII. Ineffective Assistance of Counsel
 

 Respondent argues that "she was denied effective counsel when her attorney conceded that [she] should be involuntarily committed, an argument which was in stark contrast to her wishes." However, no prior case has determined that either
 
 Strickland v. Washington
 
 ,
 
 466 U.S. 668
 
 ,
 
 104 S.Ct. 2052
 
 ,
 
 80 L.Ed. 2d 674
 
 (1984) (finding a criminal ineffective assistance of counsel claim to require deficient performance and prejudice), or
 
 State v. Harbison
 
 ,
 
 315 N.C. 175
 
 ,
 
 337 S.E.2d 504
 
 (1985) (finding
 
 *453
 
 where defendant's counsel admits to guilt in a criminal proceeding without defendant's consent to be per se ineffective assistance of counsel), are applicable to an involuntary commitment hearing. Even if we presume that an ineffective assistance of counsel claim is potentially available to a respondent denied their liberty in an involuntary commitment case, it is unnecessary for this Court to address this issue here. Since we must vacate and remand for additional findings of fact, any potential prejudice to Respondent from her counsel's argument can be addressed by the trial court on remand.
 

 IX. Conclusion
 

 The court's order contains insufficient findings to support its determination that Respondent was dangerous to herself or to others.
 
 See
 

 Whatley
 
 ,
 
 224 N.C. App. at 270
 
 ,
 
 736 S.E.2d at 530
 
 . Because the trial court failed to make sufficient findings of fact resolving material conflicts in the evidence, adjudicate questions of credibility, and only made findings by incorporation of Dr. Ijaz's report, we must vacate the order and remand for additional findings of fact regarding dangerousness to self and entry of a new order. Because there was no evidence to support a conclusion that Respondent was dangerous to others, we vacate the trial court's conclusion on that issue without remand. The commitment order is vacated and the matter is remanded.
 

 VACATED AND REMANDED.
 

 Judges TYSON and ARROWOOD concur.
 

 [1]
 

 Italics indicate hand-written additions to Form 203; the remainder is the preprinted text of the form.