IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-47

Filed: 7 July 2020

Brunswick County, No. 18 CVD 1793

CAROLINA MULCHING CO. LLC, Plaintiff,

v.

RALEIGH-WILMINGTON INVESTORS II, LLC; SHALIMAR CONSTRUCTION, INC., Defendants.

Appeal by Defendants from judgment entered 21 May 2019 by Judge C. Ashley Gore in Brunswick County District Court. Heard in the Court of Appeals 27 May 2020.

*Law Offices of Timothy Dugan, by Timothy Dugan, for the Plaintiff-Appellee.*

*Hodges Coxe & Potter, LLP, by Bradley A. Coxe, for the Defendant-Appellant.*

BROOK, Judge.

Shalimar Construction, Inc. ("Defendant" or "Defendant Shalimar") appeals from the trial court's judgment after a bench trial finding in favor of Carolina Mulching Co. LLC ("Plaintiff"). On appeal, Defendant argues that the trial court's conclusion that Plaintiff satisfactorily completed the terms of a contract is not supported by the findings of fact, and that we must reverse the trial court's order. For the following reasons, we agree with Defendant.

## I. Background

### A. Factual Background

Defendant is a construction company that does site work and land development for large construction projects. In 2018, Raleigh-Wilmington Investors II, LLC, ("Investors") entered into a contract with Defendant to clear approximately 27 acres of land in Navassa, North Carolina ("the Lena Springs Project"). Defendant's work consisted of clearing and grading the land, building roads, installing water, sewer, and storm drains, and excavating retention ponds over an area of 8.43 acres. Defendant subcontracted the initial clearing of the trees and brush to Plaintiff. After reviewing the plans and visiting the job site, Plaintiff's agent Shane Stevenson prepared a proposal. The proposal read as follows: "Service—Clearing overgrown land. Mulching trees and brush up to 6"-8" in diameter in the 8.5 acres of land for development on Main Street in Navassa, NC. Cost $15,000.00." The proposal was directly incorporated into the contract, which the parties signed.

Cameron Hall worked for Plaintiff in performing the mulching work. Plaintiff worked on the Lena Springs Project from 12 to 23 March 2018. Defendant's president and agent David Edwards was present on the job site during the days Mr. Hall was working. Mr. Hall and Defendant discussed Plaintiff's job performance while working together, and Defendant told Mr. Hall that Defendant would hire a logging company

to remove the large trees once Plaintiff finished mulching the small trees on the property.

After clearing 8.5 acres and leaving the job site, Plaintiff sent Defendant an invoice for $15,000.00, but Defendant did not pay Plaintiff. On 13 April 2018, Defendant sent a notice to Plaintiff to complete the Lena Springs Project. At trial, Mr. Edwards testified that Plaintiff did not complete work specified in the contract because Plaintiff left behind trees under eight inches in diameter. Mr. Stevenson, however, testified that he and Mr. Hall completed the work specified in the contract and that the remaining trees were larger than eight inches in diameter and outside their scope of work. On 18 July 2018, Defendant sent Plaintiff a change order revising the amount due to $2,650.00 for 1.5 acres cleared by Plaintiff and refusing to pay for the remainder of the contract, claiming that Plaintiff had not fulfilled its obligations. Defendant hired D&L Timber to cut the remaining trees on the 8.5 acres of the Lena Springs Project.

## B. Procedural History

Plaintiff filed a complaint on 26 September 2018 asserting claims of breach of contract and unjust enrichment against Defendant Shalimar and requesting enforcement of a lien pursuant to Chapter 44A of the North Carolina General Statutes against Investors. Defendant Shalimar responded on 27 November 2018

with an answer and a counterclaim for breach of contract against Plaintiff. Plaintiff voluntarily dismissed all claims against Investors prior to trial.

The parties waived trial by jury, and the case was tried before the Honorable C. Ashley Gore at the 2 May 2019 session of the Civil District Court for Brunswick County. Plaintiff presented evidence that it mulched all the trees under eight inches in diameter, and Defendant presented evidence that Plaintiff was measuring the trees by circumference instead of diameter, resulting in Plaintiff's leaving behind trees that fell within the scope of the contract.

The trial court entered an order at the conclusion of the trial on 21 May 2019 in favor of Plaintiff, including the following pertinent findings of fact:

> 7. In March 2018, Defendant contacted Plaintiff about mulching 8.5 acres of the Lena Springs Project. Plaintiff sent Defendant a proposal for $15,000.00, and Defendant sent Plaintiff a contract with Plaintiff's attached proposal.
>
> 8. The specific terms of the proposal included the type of service Plaintiff would complete, and the exact price Defendant would pay. The service provided was "[c]learing overgrown land[ and m]ulching trees and brush up to 6"-8" in diameter in the 8.5 acres of land for . . . [the Lena Springs Project]. The cost was "$15,000.00."
>
> 9. The industry standard of clearing trees and underbrush is measured by the diameter, not circumference, of trees.
>
> . . .
>
> 11. The parties signed the contract and Plaintiff began working on the Lena Springs Project on March 12, 2018.

12.     Plaintiff worked on the job site until on or about March 23, 2018.  Defendant was also present on the job site during the days Plaintiff was working, but he was performing his own duties as General Contractor.

13.     Plaintiff and Defendant discussed Plaintiff's job performance while working together[,] and Defendant seemed pleased with Plaintiff's progress.  Defendant told Plaintiff he would have to hire a logging company to remove the large trees once Plaintiff finished mulching the property.

14.     Plaintiff mulched the 8.5 acres of the Lena Springs Project; however, a controversy arose over the trees left standing after Plaintiff left the job site.

15.     The contract between the parties specified Plaintiff would mulch all trees 6"-8" in diameter or less.  Defendant contends the trees left standing on the property after Plaintiff left were smaller than 8" in diameter and should have been cleared by Plaintiff. Defendant was only satisfied with 1.5 acres of the 8.5 acre job.

16.     After leaving the job site, Plaintiff sent Defendant an invoice for the $15,000.00, but Defendant did not pay any money to Plaintiff.

17.     On April 13, 2018, Defendant sent a notice to Plaintiff to complete the Lena Springs Project, and on July 18, 2018, Defendant sent Plaintiff a Change Order.

18.     The Change Order revised the amount Defendant was to pay Plaintiff under the original contract.  The parties originally agreed to the amount of $15,000.00 for the job, and the Change Order revised that amount to $2,650.00.  This amount of pay was for the 1.5 acres that was completely cleared by Plaintiff.

19.     Several months later, Defendant hired D&L Logging to clear the rest of the trees left on the Lena Springs Project.  The logging company hauled off approximately 13 loads of wood from the project.

20.     Plaintiff continued to demand Defendant pay the $15,000.00 for the services rendered, and Defendant refused to pay any money.

The order contained the following conclusions of law:

1.      This Court has jurisdiction over the parties and the subject matter of this action.

2.      Plaintiff and Defendant entered into a written contract for Plaintiff's tree mulching services.  There was a meeting of the minds between the two parties when they entered into the essential terms of the written contract.  The Defendant even included Plaintiff's proposal in the body of the contract.

3.      Both parties signed the written contract, and the terms of the contract were clear and unambiguous; Plaintiff would provide the mulching services for the Lena Springs Project[,] and Defendant would pay Plaintiff $15,000.00.  Plaintiff's services included mulching trees 6"-8" in diameter[,] and Plaintiff satisfied those terms of the contract.

4.      Plaintiff worked with Defendant on the job site for approximately 10 days[,] and Plaintiff satisfactorily complied with the terms of the contract.  Plaintiff mulched the 8.5 acres of land specified in the contract, and therefore should be paid for the completed work.  There was no material breach of the contract by Plaintiff.

5.      Defendant did not suffer any damages from Plaintiff's performance of services rendered under their written contract.  Defendant planned on hiring a logging company to remove the larger trees on the job site before Plaintiff finished the job[] and therefore did not incur any unreasonable expenses by hiring D&L Logging months after Plaintiff left the job site.

The trial court ordered Defendant to pay Plaintiff the $15,000.00 specified in the contract plus any interest accrued. Defendant filed timely notice of appeal on 17 June 2019.

## II. Standard of Review

We review an order entered by a trial court sitting without a jury to determine whether competent evidence supports the findings, whether the findings support the conclusions, and whether the conclusions support the judgment. *Quick v. Quick,* 305 N.C. 446, 454, 290 S.E.2d 653, 659 (1982). "Unchallenged findings of fact are presumed correct and are binding on appeal." *In re Schiphof*, 192 N.C. App. 696, 700, 666 S.E.2d 497, 500 (2008). The trial court's findings of fact, even if challenged, shall not be disturbed if there is evidence to support those findings, but its conclusions of law are reviewable de novo. *Hanson v. Legasus of North Carolina, LLC,* 205 N.C. App. 296, 299, 695 S.E.2d 499, 501 (2010). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008).

## III. Analysis

Defendant argues that the trial court's findings do not support Conclusions 3 and 4 that Plaintiff mulched all trees under six to eight inches in diameter and therefore satisfied the terms of the contract. Defendant also argues that there are no findings to support Conclusion 5 that Defendant did not suffer any damages and did

not incur unreasonable expenses from the Plaintiff's performance of services. Defendant further argues that even if there were such findings, there exists no competent evidence to support them.

On the other hand, Plaintiff argues that the trial court's findings support Conclusions 3 and 4 that the Plaintiff satisfied the terms of the contract. Plaintiff contends that these findings are supported by the testimony of Messrs. Hall and Stevenson, who testified that they mulched the entire 8.5 acres, took down all trees under eight inches in diameter, and that Defendant was present at the job site for the 10 days they were working there and was satisfied with the work. Plaintiff argues that Conclusion 5 is supported by the trial court's conclusion that Plaintiff satisfied the terms of the contract and by the unchallenged finding that "Defendant told Plaintiff he would have to hire a logging company to remove the large trees once Plaintiff finished mulching the property."

For the following reasons, we agree with Defendant that the trial court's findings do not support its conclusion that Plaintiff fully performed under the contract.

Rule 52(a) of the North Carolina Rules of Civil Procedure requires a trial judge sitting without a jury to specifically find facts and state separately its conclusions of law. N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (2019). The trial court is required to set forth the "specific findings of the ultimate facts established by the evidence,

admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached." *Gilbert v. Guilford County*, 238 N.C. App. 54, 56, 767 S.E.2d 93, 95 (2014) (emphasis in original omitted). "Evidence must support findings; findings must support conclusions; conclusions must support the judgment. . . . [E]ach link in the chain of reasoning must appear in the order itself." *Coble v. Coble*, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980).

"Where the evidence is conflicting . . . , the judge must resolve the conflict. He sees the witnesses, observes their demeanor as they testify and by reason of his more favorable position, he is given the responsibility of discovering the truth." *State v. Smith*, 278 N.C. 36, 41, 178 S.E.2d 597, 601 (1971). The trial court must determine "the weight to be given [the] testimony and the reasonable inferences to be drawn therefrom. If different inferences may be drawn from the evidence, [the trial court] determines which inferences [to] draw[ ] and which [to] reject[ ]." *Knutton v. Cofield*, 273 N.C. 355, 359, 160 S.E.2d 29, 33 (1968). "[O]nly the trial court can draw these inferences or any other potential inferences based on the evidence." *In re J.C.D.*, ___ N.C. App. ___, ___, 828 S.E.2d 186, 193 (2019). "This Court does not resolve issues of credibility" or conflicting evidence. *Id.*

Therefore, it is crucial that "the [trial] court [ ] make its own determination as to what pertinent facts are actually established by the evidence[.]" *Davis v. Davis*, 11 N.C. App. 115, 117, 180 S.E.2d 374, 375 (1971). Where a trial court "merely recit[es]

what the evidence may tend to show[,]" it fails to make the ultimate findings of fact required for resolving any disputed issues. *In re Gleisner,* 141 N.C. App. 475, 480, 539 S.E.2d 362, 366 (2000). And when "[t]he trial court's order [does] not resolve the conflicts in the evidence and [does] not fully state the facts upon which its conclusions rested, [ ] we must remand for additional findings of fact." *In re J.C.D.*, ___ N.C. App. at ___, 828 S.E.2d at 193; *see also In re Gleisner*, 141 N.C. App. at 481, 539 S.E.2d at 366 (noting the need to "make ultimate findings of fact resolving the numerous disputed issues").

Here, the trial court's findings fail to state all of the necessary inferences it drew from the evidence, and several of the findings instead merely restate testimony. In Finding 14, the trial court states, "Plaintiff mulched the 8.5 acres of the Lena Springs Project; however, a controversy arose over the trees left standing after Plaintiff left the job site." Then Finding 15 states,

> [t]he contract between the parties specified Plaintiff would mulch all trees 6"-8" in diameter or less. Defendant contends the trees left standing on the property after Plaintiff left were smaller than 8" in diameter and should have been cleared by Plaintiff. Defendant was only satisfied with 1.5 acres of the 8.5 acre job.

These findings merely recount the key dispute between the parties. While the parties presented conflicting evidence regarding how Plaintiff measured the trees it mulched, neither here nor elsewhere in the findings did the trial court resolve this conflict such that it could support any assessment as to whether Plaintiff left standing trees that

were smaller than eight inches in diameter. And yet the trial court concluded—without any findings bearing out Plaintiff's compliance with its obligation in dispute—that "Plaintiff satisfactorily complied with the terms of the contract." Because the trial court failed to resolve the conflicts presented by the testimony, this conclusion is not supported by the findings.

Plaintiff argues that what the trial court labeled conclusions of law are on occasion factual findings sufficient to support the trial court's ultimate legal conclusion. Specifically, Plaintiff asserts that the statements in Conclusions 3 and 4 that "Plaintiff's services included mulching trees 6"-8" in diameter and Plaintiff satisfied those terms of the contract" and that "Plaintiff satisfactorily complied with the terms of the contract" are findings that support the legal conclusion that "[t]here was no material breach of the contract by Plaintiff." But this assertion elides the shortcoming addressed above: these statements do not resolve, much less state the basis upon which they resolve, the controversy the trial court identified—whether, due to measuring based on circumference instead of diameter, the trees that Plaintiff left behind fell within the scope of the contract. Moreover, Conclusion 5 states,

> Defendant did not suffer any damages from Plaintiff's performance of services rendered under their written contract. Defendant planned on hiring a logging company to remove the larger trees on the job site before Plaintiff finished the job[] and therefore did not incur any unreasonable expenses by hiring D&L Logging months after Plaintiff left the job site.

The scope of D&L Logging's labor, of course, turned on the number of trees left on the property. Conclusion 5 thus depends on the court's conclusion that Plaintiff fulfilled its contractual obligations and is therefore, as explained above, also unsupported by the findings of fact. In short, the order is missing essential links in its chain of reasoning to support its conclusion that Plaintiff fulfilled its contractual obligations.[1]

## IV. Conclusion

We conclude that the trial court failed to make ultimate findings of fact necessary to resolve conflicts in the evidence, and that therefore the findings do not support the conclusions of law. We therefore reverse and remand the judgment of the trial court "with instructions to make ultimate findings of fact based on the evidence and to enter clear and specific conclusions of law based on the findings of fact."[2] *In re Gleisner*, 141 N.C. App. at 481, 539 S.E.2d at 366.

---

[1] The dissent characterizes the trial court's shortcoming not as a failure to show how it arrived at its conclusion but instead as arriving at an untenable conclusion, thus requiring a straight reversal instead of a reverse and remand with instructions. The dissent is certainly right that there is evidence that Plaintiff measured by circumference, not diameter. And it is certainly possible that the trial court might not be able to marshal sufficient evidentiary support to justify ruling for Plaintiff on remand. But, in the dissent's efforts to argue that it is clear that Plaintiff measured by circumference, no such clarity emerges. The dissent instead merely highlights the contradictory nature of the testimony. It is not our place to resolve these conflicts. The trial court, having heard the evidence and seen the witnesses, is much better situated to do so.

[2] The dissent argues we are actually vacating the trial court judgment. This is, at some level, an academic debate, as the disposition line of our opinion is not as significant as the clear "instructions to make ultimate findings of fact" on remand immediately above. That being said, the reverse and remand, as opposed to vacate, nomenclature is most appropriate under these circumstances. *Compare* 1-16 North Carolina Appellate Practice and Procedure § 16.02 (2018) ("REVERSED. The appellate court has determined, usually in a civil case, that the trial tribunal committed reversible error. If the reversal requires additional proceedings in the trial tribunal, the disposition may read REVERSED AND REMANDED."), *with* 1-16 North Carolina Appellate Practice and Procedure § 16.02 (2018)

REVERSED AND REMANDED.

Judge ZACHARY concurs.

Judge DILLON dissents by separate opinion.

---

("VACATED. The order or judgment under consideration by the appellate court is rendered void. A case may be VACATED AND REMANDED when the matter must return to the trial tribunal for additional proceedings or for any other reason set out in the opinion.").

No. COA20-47 – *Carolina Mulching Company, LLC v. Raleigh-Wilmington Investors II, LLC; Shalimar Construction, Inc.*

DILLON, Judge, dissenting.

Shalimar Construction, Inc. ("Shalimar") subcontracted with Carolina Mulching Company, LLC, ("Carolina Mulching") to mulch all the trees and brush "up to 6"-8" in diameter" on a construction site for $15,000.

Carolina Mulching performed mulching work on the site pursuant to the contract. Shalimar, however, refused to pay Carolina Mulching the entire $15,000, claiming that Carolina Mulching removed only a fraction of the trees which were under 8" in diameter.

Carolina Mulching sued. A bench trial followed. At the trial, there was evidence that Carolina Mulching cut only the trees that were 8" or less in *circumference*, (which would only include trees with a diameter of 2.55" or less[3]).

The trial court entered its written decision, determining that the contract provided that Carolina Mulching mulch trees up to "6"-8" in diameter and that [Carolina Mulching] satisfied those terms of the contract." In other words, the trial court *found* that Carolina Mulching mulched all the trees under 6"-8" in diameter.

The majority has determined that the trial court erred, entering a mandate of "reversed and remanded." I agree with the majority that the trial court erred and that the mandate should be "reversed and remanded." However, in my view, the

---

[3] The equation for finding the diameter of the tree is the circumference of the tree divided by $\pi$. Here, 8" divided by $\pi$ is approximately 2.55".

majority is simply directing that the trial court's order be "vacated" rather than "reversed and remanded," and, accordingly, I dissent.

The majority holds that the trial court did not enter sufficient findings to support its judgment in favor of Carolina Mulching, but does not otherwise hold that judgment should have been entered for Shalimar. Specifically, the majority concludes that the trial court failed to enter a finding to resolve the conflict in the evidence regarding whether Carolina Mulching, indeed, cut down only the trees under 8" in circumference rather than 8" in diameter. The majority, therefore, directs the matter be remanded for the trial court *to resolve the conflict* and enter judgment accordingly, a judgment that could still be in favor of Carolina Mulching. Accordingly, I believe that the majority is simply "vacating" the trial court's judgment.

I conclude, however, that the trial court *has* made a finding resolving the conflict. The order expressly states that the contract called for Carolina Mulching to mulch all trees up to 8" in diameter and that Carolina Mulching "satisfied those terms of the contract." It is true that this statement is included in the "Conclusions of Law" section. But this statement is clearly a "finding" that resolves any conflict in the evidence, no matter how it is labeled in the order.

I conclude further, though, that *the evidence* was insufficient to submit the issue to the fact-finder. Carolina Mulching failed to meet its burden to reach the fact-finder (the trial judge in this case) to put on evidence that it mulched the trees up to

8" in *diameter*. Accordingly, the trial court's order should be "reversed" and judgment should be entered for Shalimar.

My vote to reverse differs from the majority's mandate which essentially vacates the order.[4] *See Kelso v. U.S. Dep't of State*, 13 F. Supp. 2d 12, 18 (D.D.C. 1998) ("Although the word reverse shares vacate's meanings of to [annul] and to set aside, it has an additional, more extensive definition: 'To reverse a judgment means to overthrow it by contrary decision[.]'"); *see also Mickens v. Taylor*, 535 U.S. 162, 170 n.3; 152 L. Ed. 2d 291, 303 n.3 (2002) (emphasizing that a prior ruling had only "vacated" the judgment, remanding for further proceedings, rather than "reversed" and overturned a conviction.").

Regarding my vote to reverse, I note that it is not appropriate for us to reweigh the evidence on appeal. But here I conclude that there was insufficient evidence to support the trial court's finding that Carolina Mulching mulched all the trees up to 8" in *diameter*. Admittedly, there is testimony from Carolina Mulching's witnesses that they mulched the trees that were 8" in diameter or less. However, the evidence is uncontradicted that Carolina Mulching's witnesses thought "diameter" meant

---

[4] Admittedly, judges often use "vacate" and "reverse" interchangeably. *See In re IBM Credit Corp.*, 222 N.C. App. 418, 426, 731 S.E.2d 444, 449 (2012) (stating that "[a]s a practical matter, the terms 'vacate' and 'reverse' are synonymous as used in most cases"); *Lauziere v. Stanley Martin Cmtys., LLC*, 2020 N.C. App. LEXIS 352 *15 n. 2 (discussing the difference between "reverse" and "vacate") (J. Dillon dissenting).

"circumference." Its first witness was its owner who worked the site. He testified on direct by Carolina Mulching's own attorney that he measured the circumference:

> Q:      What is the significance of six to eight inches in diameter?
>
> A:      . . . If you put a tape measure around [a tree], that would be eight inches, give or take. . . .
>
> Q:      So we're talking eight inches around it?
>
> A:      Yeah, but wouldn't do oak trees eight inches.

Later, he described how he determined whether a tree in a photograph of the site was 8" in diameter, by again describing how a tree's circumference would be measured:

> Q:      All right, can you estimate the sizes of those trees?
>
> A:      Well, it's bigger than what we typically take, which would be bigger than eight inches. If you put a tape measure on this, it's probably eight to ten inches.

Carolina Mulching's other fact witness was an employee of that company who worked on the job. He confirmed his boss's erroneous definition of "diameter":

> A:      I would not have left the trees if they were under eight inches in diameter.
>
> Q:      And again, we're talking about how [your boss] described it as take a tape measure around it and measure that tree and it's eight inches [ ] or smaller, right?
>
> A:      Say that again.
>
> Q:      Sure; [your boss] said if you take a tape measure around that tree and measure it, and if it's eight inches or less, that's –
>
> A:      That's correct.

After Carolina Mulching's case in chief, Shalimar put on a defense, calling a number of witnesses who testified that Carolina Mulching left enough trees under 8" in diameter to fill over 11 truck loads.

After Shalimar rested, Carolina Mulching recalled the employee who had described "diameter" as measuring *around* the tree, hoping his testimony would strike a different chord this second time around. When recalled, the employee did state that they were cutting trees based on "diameter."

Q:	Were you doing eight-inch circumference trees?

A:	Diameter.

However, the testimony went off on a tangent regarding whether a tree was measured from a thick part of the trunk (near the bottom) or a thinner part. The employee never demonstrated during his rebuttal testimony that he now understood what the term "diameter" actually meant or the process by which he calculated the diameter. The only evidence as to what he thought "diameter" meant was from his earlier testimony, the distance *around* a tree.

Accordingly, I conclude that Carolina Mulching, as the plaintiff in this case, failed to meet its burden of showing that it cut down all of the trees under 8" in diameter, the basis of the trial court's judgment. The trial court, otherwise, did not enter judgment based on some other theory, *e.g.* mistake.